# NEW ORLEANS *v.* GAINES'S ADMINISTRATOR.
# GAINES'S ADMINISTRATOR *v.* NEW ORLEANS.

APPEALS FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF LOUISIANA.

Nos. 1293, 1320.   Argued January 15, 16, 1891. — Decided March 2, 1891.

This suit was commenced in August, 1879, and was brought against the city of New Orleans to recover the rents, fruits, revenues and profits of 135 arpents of land, situated in the city, from the year 1837 to the time of the accounting sought. This land had been purchased by the city from one Evariste Blanc in 1834, and afterwards disposed of to various parties, except four or five blocks reserved for city purposes, which were not in question. The city was sought to be charged with all the rents, fruits and revenues of the land, whether in its own possession or in the possession of its grantees. In two previous suits brought

by Mrs. Gaines against the parties in possession, one against P. H. Mons-seaux and others, and the other against P. F. Agnelly and others, (said suits being in the nature of ejectments,) decrees were obtained for the recovery of the lands held by the defendants respectively, and references were made to a master to ascertain the amounts of rents and revenues due. The total of these rents and revenues found and reported by the master in the two suits was $517,049.34, which, with interest, calculated up to January 10, 1881, amounted to the sum of $576,707.92. The bill further sought recovery for other and larger amounts; but it was decided that the recovery must be limited to the claims so reported on by the Master, and the decree was reversed and the cause remanded for further proceedings in conformity with the opinion of the court. A decree was accordingly made and entered in the Circuit Court, by which it was referred to a master to take testimony and report as to whether the defendant (the city of New Orleans) was entitled to any, and if so, how much, reduction in the said decree of $576,707.92, by reason of any compromises and settlements of the judgments for rents in the said Agnelly and Monsseaux cases, made and entered into by the complainant and any of said defendants in said judgments for any less sums than the face thereof. The result of the inquiry was that settlements had been made, amounting to $220,213.16 which formed part of that gross amount, but that Mrs. Gaines had actually received only $15,394.50. The court below deducted this latter sum, and rendered a decree for $561,313.42. *Held:*

(1) That the right of Mrs. Gaines to pursue the city was an equitable right, arising and accruing to her on the basis of her own claims against the said defendants, and by subrogation to their equity to be protected and indemnified by the city;

(2) That the acts of settlement in this regard amounted to a declaration of the parties that Mrs. Gaines should exercise the equitable right which she possessed, and that the assignment was merely in aid of the equitable right, and might be available in a court of law;

(3) That the judgments were binding on the parties to them, and therefore were binding upon the city of New Orleans, which in most cases had assumed the defence of the suits, and had been represented by counsel therein; that it was right and proper to consider litigation as at an end in those suits; and that the judgments had passed into *res judicata;*

(4) That article 2452 of the Civil Code of Louisiana, which declares that "the sale of a thing belonging to another person is null; it may give rise to damages when the buyer knew not that the thing belonged to another person," does not affect the question here;

(5) That the grantees might be settled with so far as their personal liability was concerned, without discharging the city, or other warrantors, provided it was stipulated, or shown to be the intention of the parties, that the city, or other warrantors, should not be discharged, it being a general rule that discharge of a surety does not discharge a principal; and that rule being applicable here.

(6) That the death of a number of the defendants in the cases of Monsseaux and Agnelly who died before the remand of this cause from this court to the Circuit Court, on occasion of the former appeal, and before the decree of reference by the Circuit Court upon the mandate from this court without an attempt at revivor of the alleged decrees against the heirs or representatives of said deceased, cannot benefit the appellant;

(7) That the appellant cannot at this stage of the case raise the objection that one of the judgments for rent was obtained after the death of the defendant in the suit;

(8) That the claim for the price of the lands and the claim for the rents and revenues of them can be prosecuted separately;

(9) That the claimant should have been allowed the costs of the suits against Monsseaux and others and Agnelly and others.

Ordinary courtesy and temperance of language are due from members of the bar in discussions in this court.

IN EQUITY. The case is stated in the opinion.

*Mr. Alfred Goldthwaite* for Gaines's Administrator. *Mr. Thomas J. Semmes* was with him on the brief.

*Mr. J. R. Beckwith* for the city of New Orleans.

MR. JUSTICE BRADLEY delivered the opinion of the court.

This is the case which was before us in October term, 1888, and the decision in which will be found reported in 131 U. S. 191, under the name of *New Orleans v. Gaines's Administrator.* The suit was commenced in August, 1879, and was brought against the city of New Orleans to recover the rents, fruits, revenues and profits of 135 arpents of land, situated in the city, from the year 1837 to the time of the accounting sought. This land had been purchased by the city from one Evariste Blanc in 1834, and afterwards disposed of to various parties, except four or five blocks reserved for city purposes, which are not now in question. The city, however, is sought to be charged with all the rents, fruits and revenues of the land, whether in its own possession or in the possession of its grantees. In two previous suits brought by Mrs. Gaines against the parties in possession, one against P. H. Monsseaux and

others, and the other against P. F. Agnelly and others, (said suits being in the nature of ejectments,) decrees were obtained for the recovery of the lands held by the defendants respectively, and references were made to a master to ascertain the amounts of rents and revenues due. The total of these rents and revenues found and reported by the master in the two suits was $517,049.34, which, with interest, calculated up to January 10, 1881, amounted to the sum of $576,707.92. The bill in this case sought a recovery from the city of New Orleans not only of the said last-mentioned sum, but also of a large amount, exceeding $1,300,000, for the rents and revenues of unimproved property whilst in the possession and ownership of the city. A decree was rendered in the court below for both of these amounts, but for the reasons expressed in the opinion of this court, reported in 131 U. S., the latter amount was disallowed, and the decree was reversed. We held that the city was concluded by the proceedings against the tenants in possession in the two former suits referred to, and must respond for the amounts decreed against the tenants in those suits, subject to a reduction, however, in any of the individual cases in which compromises had been effected for a less amount than the sum adjudged. It was contended, indeed, by the complainant, that the city, by virtue of claiming title to the property, and conveying it to purchasers with a guarantee, was primarily liable for all rents and revenues to Mrs. Gaines and her representatives (the real owners of the property) without reference to the grantees, and that no settlement with the latter could affect such primary liability. We did not concur in that view, however, as will be seen by reference to the opinion before referred to. We held that the city was only liable to Mrs. Gaines, the true owner, in consequence of its engagements as vendor and warrantor to the persons to whom it had sold the property, through the equity which those persons and their grantees had to be protected from loss and damage by reason of defective title; and that Mrs. Gaines and her representatives could not hold the city liable beyond that. We held further that *as between the city and its grantees*, the city was the principal debtor, and was bound to protect them.

The primary obligations of the parties are based upon two articles of the Civil Code of Louisiana:

" Art. 502. The products of the thing do not belong to the simple possessor, and must be returned with the thing to the owner who claims the same, unless the possessor held it *bona fide.*"

It having been decided that the holders of Mrs. Gaines's property under the sales of Relf and Chew (which is the case here) are possessors in bad faith, the above article makes them responsible to her for the products, or, in other words, the fruits or revenues.

" Art. 2506. When there is a promise of warranty, or when no stipulation was made on that subject, if the buyer be evicted, he has a right to claim against the seller:

" 1. The restitution of the price.

"2. That of the fruits or revenues, when he is obliged to return them to the owner who evicts him.

" 3. All the costs occasioned, either by the suit in warranty on the part of the buyer, or by that brought by the original plaintiff.

" 4. The damages, when he has suffered any, besides the price that he has paid."

Our views with regard to the obligations of the city enforceable in the present suit were expressed in the former case in the following terms:

" As between the city and its grantee, the former, by reason of its guaranty of title, is really the principal debtor, and bound to protect the grantee as a principal is bound to protect his surety. Therefore the grantee is entitled to such remedies as a surety hath; and when fixed by judgment, if not before, may file a bill against his guarantor to protect him. Lord Redesdale says: 'A court of equity will also prevent injury in some cases by interposing before any actual injury nas been suffered, by a bill which has been sometimes called a bill *quia timet*, in analogy to proceedings at the common law, where in some cases a writ may be maintained before any molestation, distress or impleading. Thus a surety may file a bill to compel the debtor on a bond in which he has joined to

pay the debt when due, whether the surety has been actually sued for it or not; and upon a covenant to save harmless, a bill may be filed to relieve the covenantee under similar circumstances.' [Cases cited.] In *Lee* v. *Rook*, [Mosely, 318,] the Master of the Rolls said : ' If I borrow money on a mortgage of my estate for another, I may come into equity (as every surety may against his principal) to have my estate disencumbered by him.'

" Then, if the grantees, who have been ousted, and who are condemned in judgment to pay to Mrs. Gaines the rents and revenues due to her, might have maintained a suit in equity against the city to compel it to indemnify them, why may not Mrs. Gaines be subrogated to the grantees' right and equally maintain a suit against the city ? The claim is an equitable one. It is in proof that all the acts of sale of the city contained express agreements of guaranty, with right of subrogation; and an act of sale in Louisiana imports a guaranty whether it is expressed or not.

" But if the suit could not be maintained on purely equitable grounds alone, there is a principle of the civil law obtaining in Louisiana, by the aid of which there can be no doubt of its being maintainable. The Code Napoleon had an article (Art. 1166) expressly declaring that creditors may exercise all the rights and actions of their debtor, with the exception of those that are exclusively attached to the person. It is true that the Louisiana Code has no such article; but it is laid down by writers of authority that this principle prevails in French jurisprudence without the aid of any positive law. (43 Dalloz, 239, etc., title *Vente*, Arts. 932–935.) The decisions to the contrary seem to be greatly outweighed by other decisions and by sound doctrine. The right thus claimed for the creditor (the word creditor being used in its large sense, as in the civil law) may very properly be pursued in a suit in equity, since it could not be pursued in an action at law in the courts of the United States; and all existing rights in any State of the Union ought to be suable in some form in those courts.

" We think, therefore, that this part of the decree, amount-

ing to the sum of $576,707.92, with accruing interest, being for the amount of the judgments obtained in the other suits, ought to be allowed, unless subject to reduction for the cause hereafter referred to."

Our conclusion was subsequently, in the same opinion, expressed as follows:

" As to the residue of the decree, amounting to $576,707.92, founded on the judgments recovered against persons in possession of various portions of the property, claiming under sales made by the city of New Orleans, whilst those persons would have been proper parties to the suit, in order that it might appear that the sums recovered against them had not been released or compromised for less amounts than the face of the judgments, and that they might be bound by the decree, still, as the objection of want of parties was not specifically made, and as it would be a great hardship on all the parties concerned to have to begin this litigation over again, we do not think that the bill should be dismissed on that ground, but that the said sum of $576,707.92 should be allowed to the complainant, with interest thereon as provided in the decree of the Circuit Court, subject, however, to the qualification that, if the defendant can show that any of the said judgments have been compromised and settled for any less sums than the face thereof, with interest, the defendant should be entitled to the benefit of a corresponding reduction in the decree; and a reasonable time should be allowed for the purpose of showing that such compromises, if any, have been made. The result is that the decree of the Circuit Court must be reversed, and the cause remanded, with instructions to enter a decree in conformity with this opinion."

The mandate issued from this court, after reciting the former decree of the Circuit Court and reversing the same and awarding costs on the appeal, concluded as follows:

" And it is further ordered that this cause be and the same is hereby remanded to the said Circuit Court with directions to enter a decree in conformity with the opinion of this court."

In pursuance of this mandate, a decree was made and entered in the Circuit Court, by which it was referred to a master to

take testimony and report as to whether the defendant (the city of New Orleans) was entitled to any, and if so, how much, reduction in the said decree of $576,707.92, by reason of any compromises and settlements of the judgments for rents in the said Agnelly and Monsseaux cases, made and entered into by the complainant and any of said defendants in said judgments for any less sums than the face thereof.

An investigation was thereupon had, and evidence taken, and from the master's report it appears that fifty-one of the tenants had made settlements with Mrs. Gaines, or her representative; and that the aggregate of the judgments against the tenants making such settlements, with interest to the 10th of January, 1881, amounted to $220,213.16, forming part of the gross amount of $576,707.92. The amounts of money received by Mrs. Gaines on these settlements were small, not exceeding, in the aggregate, as found by the court below, the sum of $15,394.50. The master, in considering whether the settlements should have the effect to abate the amount of the decree under the opinion of this court, came to the conclusion that they should not. His views on the subject are expressed in brief as follows:

" The complainant has settled with the defendants in many cases where they were evicted by selling the land back to the defendants evicted and taking from said defendants their claims against the city in part for the price, and sometimes it constituted the entire consideration, but in every one of these cases she has expressly reserved to herself, where the subject matter of her judgment for rents and revenues is mentioned, the right to claim the amount of said judgments from the vendors of the defendant back to and including the city of New Orleans, and if it were not for the contention of counsel for the defendant that the legal effect of most, if not all, these compromises made by the complainant with the defendants had discharged the city from all obligation of warranty for rents and revenues I might close this report with the statement made above — that there was no evidence going to show that any sum had been received by the complainant on account of her judgments for rents and revenues or in any way to di-

·minish the sum of five hundred and seventy-six thousand seven hundred and seven and ninety-two hundredths dollars ($576,-707.92,) the sum of the judgment in favor of complainant as fixed by the Supreme Court."

After an examination of the objections to this view presented by the counsel of the city, the master concluded his report as follows:

"But I need not pursue this line of argument further, being satisfied that the Supreme Court, in its opinion, has settled the question of the right of Mrs. Gaines to be subrogated to the right of the grantees and maintain a suit against the city of New Orleans.

"The claim is equitable, and especially is this so under the law of Louisiana, where the warranty and the right of subrogation is part of the act of sale, whether or not it is expressed in the act of sale.

"I therefore report—

"1st. That the evidence discloses no case where Mrs. Gaines has received any sum or sums on account of her judgments for rents, revenues and values for use in the cases where compromises and agreements have been made between the complainant and the defendants.

"2d. I report that the legal effects of the acts of compromise do not diminish her judgments for rents or revenues in said Agnelly and Monsseaux cases, nor do they impair her right to recover the amounts awarded to her in her decree as fixed by the Supreme Court of the United States, say, five hundred and seventy-six thousand seven hundred and seven and ninety-two hundredths dollars ($576,707.92,) with five per cent interest, as provided in the decree of the Circuit Court, say, from January 10, 1881."

The first conclusion seems open to this criticism. Mrs. Gaines did, in some of the cases, receive money. It is true that the acts do not express on what account such money was received; but it is acknowledged to be in part consideration of the contract on Mrs. Gaines's part, which contract is usually a personal discharge of the tenant from any further claim for money, and an agreement to convey the land as soon as t! ᴄ

rents and revenues have been collected from the city, or otherwise. Thus, the act of settlement between Mrs. Gaines and Albin Rochereau, after reciting the recovery of two judgments against Rochereau in the Monsseaux suit, the first, establishing Mrs. Gaines's title, and the second decreeing to her for fruits, revenues and values for use the sum of $6885.50 and interest, and $2006.50 costs; and reciting the fact that Rochereau had an action of warranty against his vendor and previous vendors, including the city of New Orleans, as well for the price of the land, as for the amount of said judgment and costs: it was agreed —

First. That Rochereau transferred to Mrs. Gaines his said action of warranty for the price of the property.

Second. Rochereau requires his vendors, including the city, to pay to Mrs. Gaines the amount they were respectively bound for to him for fruits and revenues owing to said judgment therefor, and authorizing her to sue for the same.

The act then proceeds as follows:

" Third. And in consideration whereof and of the sum of eleven hundred dollars, receipt whereof is hereby acknowledged, the party of the first part hereby releases the party of the second part from personal liability for the said judgment for fruits, revenues and values for use of the property hereinbefore referred to, taking and accepting in lieu and place thereof the said indebtedness in warranty of said preceding vendors, including the city of New Orleans, to the said party of the second part.

" Fourth. And the party of the first part further agrees, upon her obtaining final judgment against or settlement with the city of New Orleans in said action in warranty for the price as set forth in article one of this agreement, to transfer and surrender unto the party of the second part all her right, title and interest in and to the property recovered by and described in the said final judgment of the 30th April, 1877, being the following." [Here describing the property.]

Here was an acknowledged receipt of eleven hundred dollars without specifying on what account, but manifestly as a consideration (in part) of Mrs. Gaines's contract and acquit-

tance.   The same thing occurred in other cases, but generally the amounts received were small.   When the report came up for consideration on exceptions, the court, whilst confirming it in other respects, was of opinion that the sums thus received by Mrs. Gaines ought to be deducted from the amount of the decree; and having evidence that the aggregate thereof was $15,394.50, that amount was deducted accordingly, reducing the decree from $576,707.92 to $561,313.42.

The counsel of the city of New Orleans filed a large number of exceptions to the report, all of which, except those relating to the credit claimed for the above receipts, were overruled, and some of which, as well as some portions of the brief filed on behalf of the city in this court, are obnoxious to animadversion for want of ordinary courtesy and temperance of language due from members of the bar.   We trust we may not be called upon to repeat an observation of this kind.

So far as the exceptions filed to the report are made the basis of any of the assignments of error in this court, they will be noticed.   Those assignments are twelve in number, and will now be considered.

The first assignment asserts that the Circuit Court had no jurisdiction over the cause and parties for compelling the city of New Orleans to pay to the appellees the decrees in the Monsseaux and Agnelly cases, because the defendants in those decrees were citizens of the same State with the appellant, the city of New Orleans, and could not themselves sue the city in the federal court, and the appellees have no better right in that respect than their assignors.

If the claim of Mrs. Gaines against the city depended upon an assignment by the defendants in the Monsseaux and Agnelly cases of their rights against the city, arising from their eviction, the position of the appellant would be well founded; but, as explained in our former opinion, this is not the case.   The right of Mrs. Gaines to pursue the city was an equitable right, arising and accruing to her on the basis of her own claims against the said defendants, and by subrogation to their equity to be protected and indemnified by the city.   Although a derived equity on the part of Mrs. Gaines, so far as

the city is concerned, yet it is not created by assignment, but by operation of law through the rules of equity. Hence the assignment of error is not well founded in point of fact. This may be more manifest by what will be said in relation to the next assignment.

The second assignment of error repeats the objection made in the first in cases where any assignment or convention has been made whereby any right has been assigned to Mrs. Gaines so as to modify in any respect the legal rights resulting from the situation of the parties. We do not see that this specification has any greater force than the first. The written conventions between Mrs. Gaines and the tenants or grantees had the effect, not to confer upon Mrs. Gaines a right of suit in equity, but rather to indicate the intention of the parties as to her exercise of that right. The acts of settlement in this regard amounted to a declaration of the parties that Mrs. Gaines should exercise the equitable right which she possessed. In terms, the several acts may indicate more. They may indicate the actual assignment of rights; but as Mrs. Gaines had the right of prosecution by way of subrogation, independent of any such assignment, the assignment did not destroy it or take it away. It was merely in aid of the equitable right, and might be available in a court of law.

Subrogation is not assignment. The most that can be said is, that the subrogated creditor by operation of law represents the person to whose right he is subrogated. But we have repeatedly held that representatives may stand upon their own citizenship in the federal courts irrespectively of the citizenship of the persons whom they represent, — such as executors, administrators, guardians, trustees, receivers, etc. The evil which the law was intended to obviate was the voluntary creation of federal jurisdiction by simulated assignments. But assignments by operation of law, creating legal representatives, are not within the mischief or reason of the law. Persons subrogated to the rights of others by the rules of equity are within this principle. When, however, the State or the governor of a State is a mere figure-head, or nominal party, in a suit on a sheriff's or administrator's bond, the rule does not apply.

There the real party in interest is taken into account on the question of citizenship. Spear's Fed. Jud. 150, 152, and cases there cited; *Coal Co.* v. *Blatchford*, 11 Wall. 172; *Rice* v. *Houston*, 13 Wall. 66; *Browne* v. *Strode*, 5 Cranch, 303; *Irvine* v. *Lowry*, 14 Pet. 293; *McNutt* v. *Bland*, 2 How. 9; *Huff* v. *Hutchinson*, 14 How. 586.

The third assignment of error complains that the Circuit Court erred in supposing that, by the decree of this court, the complainant was entitled to a definitive decree for the amount of the judgments in the suits against Monsseaux and Agnelly, subject only to diminution by such amounts as Mrs. Gaines may have received in compromising with the several defendants; whereas the appellant contends that the said judgments were open for examination as to any defence against them which might be shown to exist, such as corrections to be made for mistakes in the calculation of interest, and errors in entering the judgments after the decease of the parties, or for other equally valid reasons. Upon an examination of the record, however, we do not perceive that the court below misunderstood or departed, in this respect, from the terms of the decree made by this court. The judgments were binding on the parties to them, and therefore were binding upon the city of New Orleans, which in most cases had assumed the defence of the suits, and had been represented by counsel therein. We supposed that it was right and proper to consider litigation as at an end in those suits, and that the judgments had passed into *res adjudicata*. If any fraud could have been shown and proved in the entry of the judgments, the case might have been different, provided the objection had been taken at the proper time; but, although hints and charges of fraud are loosely made in argument, we have not found that any fraud was proved; and it is too late at this time to search for errors in the proceedings in those cases, or to review the judgments for the purpose of discovering error. The time for that has gone by; and, besides, mere matters of error cannot be inquired of in this collateral way. This is not an appeal from those judgments, and they cannot be questioned on the ground of mere error. If any of them were absolutely void, it would

be another matter. We do not think that the assignment of error in question, or the fourth assignment, which raises the question of erroneous computation of interest, can be sustained.

The fifth assignment of error is based upon the supposition that the defendants in the cases of Monsseaux and Agnelly had been adjudged to be fraudulent purchasers of the property, with knowledge that it did not belong to their pretended vendor, but that it did belong to Mrs. Gaines; that therefore the sales made to such persons were a nullity under Art. 2452 of the Civil Code of Louisiana, which declares that "the sale of a thing belonging to another person is null; it may give rise to damages when the buyer knew not that the thing belonged to another person." We are of opinion, however, that this article does not affect the question here. The defendants in those cases, being purchasers either from the city of New Orleans or its grantees, remote or immediate, are not adjudged to have had actual knowledge of the vice in the title of their grantors; and the grantors, having made express contracts of warranty, cannot set up such knowledge, even if it existed, to exonerate themselves from the ordinary obligations of their contract. If the position of the counsel for the city was correct, no possessor in bad faith, though merely such in law, and not in fact, could ever recover compensation from the author of his title, however solemn may have been the acts of sale and warranty by which the title was transferred. The article of the code referred to (Art. 2452) is the same as Art. 1599 of the French Code, and is derived from the old French law. Pothier says: "The knowledge of the buyer that the thing does not belong to the seller, or that it is hypothecated, does not prevent him from being received to demand a restitution of the price in case of eviction; neither does it prevent him from being received to demand the damages which he suffers beyond the price, if the warranty is expressly stipulated by the contract, for it is only in those cases when it is not stipulated that the buyer who has this knowledge is excluded from his demand in damages." Pothier on Sales, sec. 191.

Duranton, writing since the code was adopted, and com

menting upon it, says: "As to the second question, whether the buyer who knows the danger of eviction, but has stipulated for a guaranty, has this right of guaranty, even for damages, we would decide according to the Roman law before cited in the affirmative." Cours de Droit Fr. suivant le Code Civil, vol. 16, No. 264. Troplong says: "According to this article, 1599, the buyer who knows that the thing sold to him belongs to another has no right to damages. But nothing prevents the parties from making a contract in derogation of this rule of law, and the stipulation for a guaranty places the parties beyond the operation of Art. 1599." Troplong Vente, vol. 1, No. 469.

The same doctrine is laid down by Laurent, vol. 24, No. 260.

In the present case there was an express warranty in all the acts of sale made by the city. There is, therefore, no foundation for this assignment of error.

The sixth assignment is as follows:

"The Circuit Court erred in passing into the account and decree any part or portion of any pretended decree or decrees in the Monsseaux and Agnelly ejectment bills, where the decrees against the evicted had been either released, cancelled, modified, compromised or discharged, either before or after the filing of the bill in this cause, particularly the decrees against the persons and defendants in the Monsseaux and Agnelly bills set forth in 'Appendix B' of this brief, made part of this assignment of error for certainty, being a tabulated list of evicted, the decrees against whom were formally discharged and released prior to the institution of this action."

The judgments referred to in this assignment are the fifty-one judgments before mentioned, in regard to which settlements were made between Mrs. Gaines and the defendants, and the assignment brings up the main question to be determined on this appeal; that question being whether, by these settlements, Mrs. Gaines, or her representatives, waived or discharged her claim against the city. The different acts of settlement were appended to the report, and form part of the record on this appeal. The form in which a number of them is conceived has already been given in the case of Albin Roche-

reau. Other acts were in a somewhat different form, but there was in no case an absolute discharge of the defendant or grantee without a reservation of right of subrogation against the city of New Orleans, and other warrantors. In most cases a small sum of money was received from the defendant, with a transfer by him to Mrs. Gaines of his right to proceed against his warrantors, including the city of New Orleans, followed by a personal discharge of such defendant from any further claim for fruits and revenues, with a contract to give him a title to the land in his possession as soon as a recovery should be had from the city. In other cases the defendant or grantee surrendered and gave up to Mrs. Gaines the possession of the land, and assigned to her all his rights against the city in consideration of a personal discharge from her claim for fruits and revenues. Still other forms were also adopted, but in all the right to prosecute the city was reserved. Under the peculiar law of Louisiana with regard to subrogation, as explained in our former opinion, we think that Mrs. Gaines might make settlements of this kind with the defendants or grantees without losing her claim against the city as warrantor and principal debtor. The city was not injured thereby, having no claim over against the defendant thus settled with. An absolute payment or compromise of her claim without any such reservation might have had a different effect, inasmuch as it would have shown that the intention of the parties was to extinguish the claim altogether. Such was our view in the former decree in providing for an abatement in regard to cases in which compromises may have been made. As stated in our former opinion, the city of New Orleans was the principal debtor as between it and its grantees, immediate or remote. This being so, such grantees might be settled with so far as their personal liability was concerned, without discharging the city, or other warrantors, provided it was stipulated, or shown to be the intention of the parties, that the city, or other warrantors, should not be discharged. It is a general rule that discharge of a surety does not discharge a principal; and the equity of that rule is applicable to the present case. The rule itself is so self-evident that it hardly needs authority for its support. It

is, however, directly asserted in the case of *Mortland* v. *Himes*, 8 Penn. St. 265, and is laid down in Pitman on Princ. and Surety, 176, 192 (Law Lib.). See also *Kirby* v. *Taylor*, 6 Johns. Ch. 242, 250, to the same effect. Art. 2205 of the Civil Code of Louisiana declares that "the remission or even conventional discharge granted to a principal debtor discharges the sureties. That granted to the sureties does not discharge the principal debtor. That granted to one of the sureties does not discharge the others."

In our opinion, therefore, this assignment cannot prevail.

The seventh assignment of error complains that a number of the defendants in the cases of Monsseaux and Agnelly died before the remand of this cause from this court to the Circuit Court, on occasion of the former appeal, and before the decree of reference by the Circuit Court upon the mandate from this court; and that there had been no attempt at revivor of the alleged decrees against the heirs or representatives of said deceased. We do not see how the facts referred to can benefit the appellant. The decree is not against those defendants who are said to be now deceased, but against the city of New Orleans; and no change by death or otherwise of the parties in said former suits could affect the rights of Mrs. Gaines or her representatives in the present suit. The prosecution of the city operated in relief of the obligations of the defendants in those suits, and if any of them die the prosecution of this case will operate in relief of their lawful heirs, whoever they be, or their successions, however represented. We think there is no force in the assignment. The same may be said with regard to the eighth assignment of error, which complains that the court below erred in charging the account against the city of New Orleans with the amount of a pretended decree against Albin Soulié, rendered, as alleged, five years after his death, for rents accruing after his death. The facts appearing in the record are, that Soulié resided in France, and was represented in this country by Bernard Soulié, his brother and agent, and that counsel were regularly employed to represent him in the controversy, said counsel being also the counsel of the city of New Orleans; and

that the suit was continued to its termination in the name of said Albin Soulié, without any mention of his death. The said Bernard, his brother, being his universal legatee, and recognized as such in the probate court, it would be a fraud upon the Circuit Court to set aside all those proceedings as absolutely null and void. A judgment rendered after a defendant's death, without the plaintiff's fault, is not void. The irregularity or error may be cured by entering it *nunc pro tunc* of a date prior to the defendant's death; and even this has been held not necessary in a collateral proceeding. Freeman on Judgments, §§ 57, 140, 153, and cases cited.

But it does not lie in the mouth of the city of New Orleans to raise the question, at the present stage of the case, after the decree passed by the Circuit Court and an appeal to this court, and a remand of the cause to the Circuit Court for further proceedings, during all which time this objection could have been made, but never was made until the matter came before the master on the last reference. We think that the appellant was estopped from raising the objection, and that it cannot be urged now.

The ninth assignment of error asserts that the court below erred in charging the city with the judgments against Amée Gautier, Jules Bermudez and others, who had been formally discharged by order of the court on motion of Mrs. Gaines, complainant, before the bill in this case was filed. We do not see how the discharge of the decrees against these defendants could have any greater effect in discharging the city of New Orleans from its obligation than the personal discharge of the defendants by the several acts of settlement. We have already considered the question, whether the city was discharged from its obligation by the personal discharge of the defendants in the other suits, and have expressed our conviction that it was not. As it was the intent of the parties not to discharge the city, and as one of the considerations of the agreements for settlement was, that Mrs. Gaines should pursue her remedy against the city, it seems to us that the manner in which the defendants were discharged is of no consequence. It might have been by acts or deeds passed before

a notary, or by a cancellation of the judgments against the parties, or in any other manner.

The tenth assignment of error is based on the fact alleged and appearing in evidence, that in thirty-three cases in which judgments had been rendered in the Monsseaux and Agnelly suits, the city had been sued upon the obligation of warranty for the recovery of the prices of the respective properties involved, and judgments had been recovered and satisfied; the aggregate amount being $65,500.59. The point of the assignment of error is that the prosecution of these suits upon the respective warranties therein propounded and the recovery of a part of the demands under the said warranties, namely, the prices of the lands, operated as a waiver and discharge of the other liabilities arising upon the same warranties, viz. the liabilities to restore the rents, revenues, etc,; that the contract of warranty is one and undividable; that although upon the breach of it a recovery may be had against the warrantor for the restitution of the price, for the fruits or revenues, for costs and other damages, yet only one suit can be maintained upon the contract, and not different suits for the different matters recoverable; and that the splitting of actions upon single demands is not allowed by the Code of Practice of Louisiana, the 156th article of which declares: "If one demand less than is due him, and do not amend his petition, in order to augment his demand, he shall lose the overplus."

The thirty-three judgments referred to were obtained against the city for the price of certain lands. The present suit is brought for the rents and revenues of the same and other lands. The thirty-three suits were brought in the names of the original defendants in the Monsseaux and Agnelly suits. The present suit is brought in the name of Mrs. Gaines, under her right of subrogation. There does not seem to be any good reason for saying that the claim for the price and the claim for rents and revenues may not be separated by the act of the parties. In some of the cases the defendants surrendered the land to Mrs. Gaines. In such cases there would have been no incongruity in their reserving to themselves the right of looking to the city for the price, and of giving to Mrs.

Gaines the right of looking to the city for the rents and revenues. The price might well belong to them, and the rents and revenues to her. Besides, the article of the Code of Practice referred to is a rule of practice, relating to the due order of proceeding to prevent an unnecessary multiplication of suits, and does not affect the equity and justice of the different portions of the plaintiff's demand; and therefore the benefit of the rule should be claimed, on the institution of a second and unnecessary action, at an early stage of the proceedings. This cause went to a decree; that decree was appealed to this court, the appeal was heard, and the amount of the judgments for rents and revenues was sustained, and the matter was referred back to the court below to make a single inquiry. It was then too late, as it seems to us, if the suits for price had been commenced before the present suit, to raise for the first time the objection now made. But the fact is, that those suits were commenced after the present suit, and the objection, if taken at all, was one to be taken in those suits, and not in this. We think, therefore, that this assignment of error is not tenable.

The eleventh assignment of error is that the complainant, Mrs. Gaines, had no right to recover the property in question in the suits against Monsseaux and Agnelly, because they acquired their title under Mary Clark, the grandmother of Mrs. Gaines, and the first warrantor of the spurious title, who falsely claimed ownership of the property under the first will of Daniel Clark, dated in 1811, which was revoked by the will of 1813 made in favor of Mrs. Gaines; and that therefore, as Mrs. Gaines was the direct heir at law of Mary Clark, as such she was estopped from claiming the lands which her grandmother had fraudulently conveyed and through whose conveyance the defendants held possession of the lands as purchasers thereof. If Mrs. Gaines had ever accepted the succession of her grandmother, Mary Clark, as unconditional heir, she would have been liable for Mary Clark's debts whether created by warranty or other cause. But not otherwise. No such acceptance has been alleged or proved. But it is obvious that this defence against the claim of Mrs. Gaines, if it was a defence

at all, should have been set up in the Monsseaux and Agnelly suits, and not in this collateral way. The assignment is clearly not well taken.

The remaining assignment is a general one which does not call for particular observation.

In concluding this part of the case, we have only to say that as far as the appeal of the city is concerned, we do not find any error in the decree of the court below.

The complainants, on their part, also appealed, and have brought to our attention two matters which they regard as errors to their prejudice. *First,* the allowance of the sum of $15,394.50 as an abatement of the amount due from the city on account of the sums received by Mrs. Gaines from the parties with whom she made settlements; *secondly,* the non-allowance to the complainant of the costs of the suits against Monsseaux and others, and Agnelly and others, which costs amounted to the sum of $34,000.

As to the first specification, the counsel of Mrs. Gaines rely upon a declaration of record made by the city of New Orleans, in the civil district court of New Orleans, division D, in a suit brought against the city for the price of four several lots recovered in the Monsseaux and Agnelly suits. The city in that case, by way of peremptory exception, pleaded that Mrs. Gaines had recovered against it, in the Supreme Court of the United States, $576,707.92, with interest, decreed to be due by the city on its warranty to said purchasers. It is contended by the counsel for Mrs. Gaines that this declaration is an estoppel against the city as to the amount of the decree in this court, and that no reduction of it can be made on account of the moneys received by Mrs. Gaines, or in any other way. But we do not consider that this declaration has the effect contended for by counsel. The city, in that case, simply pleaded the decree of this court, such as it was, the point being that a prosecution and recovery had already been had upon the same warranties which were sued upon in that case. The effect of the averment as an estoppel cannot properly be carried beyond the true purport and effect of the decree which was the subject of the averment, namely, the decree of this

court. This was evidently the intent with which the averment was made, and we think that the city was not precluded by the declaration in question from contending before the master that the amount of moneys actually received by Mrs. Gaines on the judgments included in the decree should be charged to her. Especially do we think so, in view of the terms of the said decree, which expressly allowed an inquiry into any settlements or compromises that had been made. We think the court below committed no error in allowing the said sum, and deducting it from the amount of the decree. The payments which it embraced were clearly intended as payments on the respective judgments. There was no other account to which they could be applied; and as there was no proof to the contrary, they must be presumed to have been made upon the money portion of said judgments.

As to the other point, the costs of the Monsseaux and Agnelly suits, we think they should have been allowed. There was nothing in the terms of our former decree which precluded such an allowance. The general effect of that decree was that the fictitious rents and revenues allowed for unimproved lands, amounting to over a million of dollars, were improperly allowed; but that the decree for the amount of the judgments recovered against the defendants in the Monsseaux and Agnelly suits was proper and right, unless it could be shown that those judgments had been compromised for less than the amounts due. The naming of the amount was for the purpose of identification. There was nothing in this general language that prevented the court below from including the costs of those suits in the decree. Our conclusion upon the whole case, therefore, is that the decree of the court below should be modified by adding to it the amount of said costs, to wit, $34,000, with interest as adjudged in the original decree of said court.

*The cause is, therefore, remanded with instructions to the court below to modify its decree in accordance with this opinion.*

MR. JUSTICE BREWER dissented.

MR. JUSTICE GRAY was not present at the argument, and took no part in the decision.