McDUFFIE et al. v. MONTGOMERY.

(Circuit Court, N. D. Illinois, N. D. February 8, 1904.)

No. 26,885.

1. WILLS—CONSTRUCTION.

Under a will by which the testator gave his residuary estate to his wife "absolutely," with a request that at her decease or before she give to his son $30,000, "or any sum she may think best," provided he was of good habits, otherwise not, and a further request that at her decease she should divide her property among his brothers and sisters "as she may think best," no interest in the property of the testator vested in the brothers and sisters prior to the wife's decease, and the legal representatives of those who died before her death are not proper parties to a suit against her executor to establish and enforce a trust under the will of her husband.

2. JURISDICTION OF FEDERAL COURT—CITIZENSHIP OF ADMINISTRATOR.

A state statute providing that a nonresident cannot act as administrator does not make an administrator appointed therein a citizen of the state for the purpose of the jurisdiction of a federal court, which is determined by his actual citizenship.

3. WILLS—CONSTRUCTION—PRECATORY TRUST.

The will of a testator gave his residuary estate to his wife "absolutely," with a request that at her death, or before, if she should think best, she give to his son a certain sum or any sum she might think best. The will then provided: "I further request that she, my said wife, shall assist any of my brothers or sisters if they should be in need, and at her decease she should divide her property among them as she may think best." Held, that the will gave the wife an absolute estate in the property, and did not create a precatory trust in favor of the testator's brothers and sisters.

In Equity. On demurrer to bill.

Frank E. McDuffee and Isham, Lincoln & Beale, for complainants.
E. C. Ritsher and Louis E. Hart, for defendant.

KOHLSAAT, District Judge. From the bill filed herein, it appears that Henry E. Sawyer died in the state of Massachusetts on September 12, 1887, leaving a last will and testament, whereby he bequeathed and devised his real and personal estate, valued at about $125,000, as follows, viz.:

"I give and bequeath to my two sisters, to-wit: Mrs. Jane Robie and Lydia Sawyer, each fifteen hundred dollars. I give and bequeath all the balance of my property consisting of bonds, bank stock, notes, demands, real estate and personal to my wife Amanda N. Sawyer absolutely; and request that at her decease or before, if she shall think proper she give to my son, Harry C. Sawyer, the sum of thirty thousand dollars, or any sum she may think best, provided he is of good habits and capable of using such monies to good advantage. But unless he is a person of good habits in every respect, he is not to have the control of any of such money.

"I further request that she, my said wife, shall assist any of my brothers or sisters if they should be in need, and at her decease she should divide her property among them as she may think best."

---

¶ 2. Diverse citizenship as ground of federal jurisdiction, see notes to Shipp v. Williams, 10 C. C. A. 249: Mason v. Dullagham, 27 C. C. A. 298.
See Courts, vol. 13, Cent. Dig. § 858.

The will was duly admitted to record in the probate court of the county of Middlesex, state of Massachusetts, on or about November 9, 1887, and Amanda N. Sawyer qualified as executrix thereof. In the course of her duties as such executrix she financially assisted her husband's sister Elizabeth H. McDuffie, one of the defendants, and her husband's nephew, Frank E. Sawyer. It does not appear what was done for testator's son, Harry C. Sawyer, nor what has become of him. He is not made a party to the suit. If living, he is, of course, an indispensable party. Afterwards, and about December 31, 1902, Amanda N. Sawyer died at Chicago, Ill., testate. Her will distributed her estate, amounting at that time to about $190,000, between the relatives of herself and her said husband, giving the greater portion thereof to her own relatives. The defendant, Montgomery, was therein named, and afterwards qualified as executor and trustee.

The complainants insist that by the will of said Henry E. Sawyer, a trust was created in favor of his brothers and sisters, i. e., Elizabeth H. McDuffie, Jane J. Robie, Lydia A. Sawyer, Edward C. Sawyer, four of the complainants, and Joseph Sawyer, John H. Sawyer, Mary D. Burroughs, and Emily P. Blanchard, brothers and sisters, who have died since the death of said Henry E. Sawyer. These latter four are represented, among the complainants herein, by their several legal representatives. It is further claimed by the bill, in effect, that the interest of said brothers and sisters vested as of the date of the death of said Henry E. Sawyer, and the court is asked to decree that the defendant proceed to distribute the estate in his possession, to wit, the estate of said Henry E. Sawyer now remaining, and the increment thereof, in accordance with the terms of his will, and execute said trust in favor of his said brothers and sisters. The matter now comes before the court on demurrer, setting up the following special grounds: (1) That the legal representatives of deceased brothers and sisters are not proper parties to the suit, having no interest in the subject-matter; (2) that the allegations of the bill with regard to assistance rendered by Amanda Sawyer to her husband's relatives during her lifetime are impertinent; (3) that the allegations of the bill with reference to Henry E. Sawyer's sentiments toward his wife's family are also impertinent; (4) that no case for the relief sought is presented by the bill.

The point first made must turn upon a construction of the will of Henry E. Sawyer with reference to the time when the interests of the brothers and sisters vested. After giving the wife an estate, absolute in terms, the testator adds, "and request that at her decease, or before, if she shall think proper, she give to my son Harry C. Sawyer, the sum of thirty thousand dollars, or any sum she may think best." In the event his habits were not good, he was to have no part thereof. Fairly construed, this gave the wife the option to give Harry whatever she wished, even to the exhaustion of the whole estate, provided his conduct was good. Had she done so, complainants could have made no claim. Then, too, the wife is requested to assist the brothers and sisters "in need of help," and at her decease she should divide her property among them as she may think best. If this clause means anything, it means that she had discretion to divide the estate among

the brothers and sisters, or those who needed it, in such proportions as she thought best. This would involve the right to give to some of them nothing, or a nominal amount, and to others the bulk thereof, or she was at liberty to use it all up in her lifetime. Everything considered, it seems evident that, if title in the brothers and sisters vested at all, it must have vested as of the date of the wife's death. Therefore the legal representatives of those who had deceased prior to that date have no interest in the subject-matter, and are not proper parties to this suit. If the estate had vested in the brothers and sisters at the time of Henry E. Sawyer's death, then, as to the real estate involved in this suit, the heirs of those who have died would be necessary parties. If the estate did not vest until the wife's death, then only the surviving brothers and sisters would be concerned.

I think it clear the bill is defective as to parties. Under the view the court takes of this case, and hereinafter stated, the matter covered by the said special grounds of demurrer 2 and 3 are wholly immaterial and need not be passed on.

The point made by defendant, that Frank E. Sawyer, as administrator of Joseph Sawyer, appointed by the probate court of Cook county, Ill., must be held to be a resident of this state, because by the Illinois administration statute a nonresident cannot act as administrator, is not well taken. The residence or citizenship of an administrator is the fact which determines jurisdiction. Rice v. Houston, 13 Wall. 66, 20 L. Ed. 484; New Orleans v. Gaines, etc., 138 U. S. 595, 11 Sup. Ct. 428, 34 L. Ed. 1102. The Illinois statute provides how an administrator who has left the state may be removed. The question cannot be raised in a collateral proceeding for purposes of jurisdiction.

The substantial questions of this case are those raised by the general demurrer set out as ground 4 of said demurrer. It is settled beyond need of citation, in this country, that the courts will, in cases like this, be governed by one never varying rule, i. e., to effectuate the intention of the testator. If this can be reasonably arrived at from the terms of the instrument, that must prevail. Extraneous facts cannot be injected for the purpose of placing a different construction thereon from that which is the plain meaning of the language used. Schouler on Wills, § 568 (2d Ed.); Underhill on Wills, § 913. What, then, is the plain, common-sense meaning, as effected by the decisions, of the language of the will now before the court, since, of course, the language used must be construed with reference to any well-established legal construction thereof, and it will be assumed that the testator used the phrase with knowledge of such construction, unless the contrary appears? The language used, viz., "I give and bequeath all the balance of my property consisting of bonds," etc., real estate and personal, "to my wife Amanda N. Sawyer absolutely," of itself creates an absolute estate in the widow. It is claimed by the bill that the subsequent language, requesting her, at her decease, to divide her property among "them as she may think best," creates a so-called "precatory trust," and that it has the same force as though it had been a command.

In order to maintain the contention of complainants herein, the facts must bring the case within the rule concerning precatory trusts. Tersely stated, that rule requires: (1) That the words used must be such that it shall appear from them that they were intended in an imperative sense. (2) The subject of the recommendation or wish must be certain. (3) The object thereof must be certain.

It is the contention of complainants that all of these elements exist in the clause of the will relied on. In support of their position, complainants cite, among other cases, the case of Smith v. Bell, 6 Pet. 68, 8 L. Ed. 322, decided by Chief Justice Marshall in 1832. The facts were as follows, viz.: The testator gave to his wife all his personal estate "to and for her own use and benefit and disposal absolutely, the remainder of said estate after her decease, to be for the use of the said Jesse Goodwin," a son of testator. (In Campbell v. Beaumont, 91 N. Y. 468, 469, and Fox's Appeal, 99 Pa. 382, the doctrine of this case is questioned.) It will be noticed that the wording in this case is not a request or wish, but a plain and strong statement, that the remainder is to be for the use of the son. This claim is just as peremptory as that pertaining to the wife. It would seem that, if there ever was a case where the use of the word "absolutely" should not be given its strict sense, this is the case. The intention of the testator is apparent. The subject-matter involved consisted of shares, in regard to which the court says it is "a species of property not consumed by the use, and in regard to which a remainder may be limited after a life estate." The court also says: "The testator unquestionably intended to make a present provision for his wife and a future provision for his son. This intention can be defeated only by expunging or rendering totally inoperative the last clause of the will," thereby, as the court holds, ignoring the testator's intention. No one, it seems to me, can read this case without acquiescing in the conclusion of the court. Whatever hesitancy the courts have felt in regard to it grows out of the fact that the will does contain two apparently conflicting provisions; that is, it creates two absolute estates on its face. These the court had to reconcile, which it found no difficulty in doing.

The other Supreme Court case relied on by complainants is that of Colton v. Colton, 127 U. S. 300, 8 Sup. Ct. 1164, 32 L. Ed. 138, decided in 1887 by Justice Matthews. The facts are these: Colton, a resident of California, died testate. By the will, testator gives and bequeathes to his wife all the estate, real and personal, of which he died seised or entitled to, and adds, "I recommend to her the care and protection of my mother and sister, and request her to make such gift and provision for them as in her judgment will be best." The estate amounted to $1,000,000. The case came before the court on appeal from the decree of the Circuit Court sustaining a demurrer to and dismissing the bill. The point in dispute was whether a trust was created in favor of the mother and sister, or whether the widow took the estate absolutely, with liberty to disregard the request and recommendation, and make provision for them or not, as she chose. The court (page 313, 127 U. S., page 1170, 8 Sup. Ct., 32 L. Ed. 138) quotes with approval the following declaration of Vice Chancellor

Cranworth in Williams v. Williams, 1 Simons (N. S.) 358: "I doubt if there can exist any formula for bringing to a direct test the question whether words of request or hope or recommendation are or are not to be construed as obligatory;" and also the language of Gray, C. J., in Hess v. Singler, 114 Mass. 56, as follows: "It is a settled doctrine of courts of chancery that a devise or bequest to one person, accompanied by words expressing a wish, entreaty, or recommendation that he will apply it to the benefit of others, may be held to create a trust, if the subject and the objects are sufficiently certain. * * * It must appear that the words were intended by the testator to be imperative, and, when property is given absolutely and without restriction, a trust is not to be lightly imposed upon mere words of recommendation or confidence"; and holds that the above language in the Colton will creates a trust in favor of the mother and sister. It is apparent that the court considered this case an extreme application of the principles invoked, since the opinion lays hold of every detail, such as the difference in expression between said clause and the following one, with reference to the children of testator and his wife; also the fact that testator died the day after making his will, which it is assumed he made in haste; also the fact that the mother was aged, feeble, and a widow, and that the sister was caring for her; also that the only income possessed by the mother and sister was the interest on his own note of $15,000 loaned to him many years before by his father, and the further fact that his own estate was more than ample for his wife and children. Undoubtedly it was an extreme case, justified, as the court holds, by the circumstances. In order to bring a case within the requirements of a precatory trust, it is necessary that the language used should be imperative, and that the subject and object be certain (Cruwge v. Colman, 9 Ves. 323; Bland v. Bland, 2 Cor. 349; Warner v. Bates, 98 Mass. 274; Knight v. Knight, 3 Beav. 179; Flint v. Hughes, 6 Beav. 342; Fox v. Fox, 27 Beav. 301; Mills v. Newbury, 112 Ill. 123, 54 Am. Rep. 213), and the court held all of these conditions to exist in the Colton Case. The objects of the trust were the mother and sister, the subject-matter was "a permanent provision for them during their respective lives, suitable and sufficient for their care and protection, having regard to their condition and necessities and the amount and value of the fund from which it must come." In regard to the clause "I * * * request her [the wife] to make such gift and provision for them as in her judgment will be best," the court held that the discretion reposed thereby in her did not involve the right to choose whether a provision shall be made or not, but that it was to be the exercise of judgment by her, directed to the care and protection of the beneficiaries, by making such a provision as will best secure that end; and then lays down the rule that a court of equity had full power to act for her in case she refused to perform the trust. There was no uncertainty as to the existence of the fund from which it should be provided. It was a prior charge upon the whole property devised.

Many other cases are cited for complainant, but in each of them there are features which distingush them from the case at bar.

In support of the claim of defendant that the title vested absolutely

in his testatrix, defendant cites the case of Howard v. Carusi, 109 U. S. 725, 3 Sup. Ct. 575, 27 L. Ed. 1089, wherein the court passed upon a somewhat similar case. One Lewis Carusi, a bachelor, died testate, and seised of real estate. By his will he devised and bequeathed all his estate, personal and mixed, to his brother, his heirs, executors, administrators, and assigns forever, "with the hope and trust, however that he will not diminish the same to a greater extent than may be necessary for his comfortable support and maintenance and that at his death the same or so much thereof as he, the said Samuel Carusi, shall not have disposed of by devise or sale shall descend to my three beloved nieces," etc., giving to one niece the sum of $5,000, and the balance, share and share alike, to the other two, and adds, "I further hope, trust and desire that in the event either one of my said nieces * * * shall not survive my said brother Samuel, that the share she might be entitled to had she survived him, may be conferred and fall to the surviving niece or nieces." Afterwards testator executed a deed of trust to Samuel Carusi in fee, authorizing him to reduce the estate to money and invest the proceeds for the use of testator, and after testator's death to convey the estate then remaining to such parties as he might name in his will. There was some dispute as to delivery of this deed. Afterwards testator executed and delivered to Samuel Carusi a deed in fee simple of said lands, reserving a life use in himself. On the death of Samuel Carusi, one of the beneficiaries under the said clause of the will of Lewis Carusi brought suit against the beneficiaries under the will of Samuel Carusi for her portion of said estate. The Supreme Court thereupon construed said clause, and held that the complainant took no interest thereunder, because an absolute estate was by said will vested in Samuel Carusi. The court says the words used do not raise any trust in Samuel, and that, even had the will contained an express request that Samuel should convey to the complainant so much of the estate as he did not dispose of by sale or devise, there would be no trust, for the will gives the absolute power of disposal. To the same effect are Jackson v. Bull, 10 Johns. 18; Ide v. Ide, 5 Mass. 500; Melson v. Cooper, 4 Leigh, 408.

In Knight v. Knight, 3 Beav. 148, the court says: "If it appears from the context that the first taker was to have a discretionary power to withdraw any part of the subject from the wish or request, * * * it has been held that no trust was created." Where the first taker has the absolute power of disposal, or ownership, or where a clear discretion and choice to act, or not, is given, equity will not construe a trust from the language employed. Jackson v. Bull, 10 Johns. 18; Ide v. Ide, 5 Mass. 500; Bowen v. Dean, 110 Mass. 438; Bills v. Bills, 80 Iowa, 269, 45 N. W. 748, 8 L. R. A. 696, 20 Am. St. Rep. 418; Fullenwider. v. Watson, 113 Ind. 18, 14 N. E. 571; Gibbins v. Shepard, 125 Mass. 541; Clay v. Wood, 153 N. Y. 134, 47 N. E. 274; Giles v. Anslow, 128 Ill. 187, 21 N. E. 225; Coulson v. Alpaugh, 163 Ill. 304, 45 N. E. 216.

In Randall v. Randall, 135 Ill. 398, 25 N. E. 780, 25 Am. St. Rep. 373, the court holds that "no trust can be implied merely from the words indicating the motive which induced the gift, and the rule is,

whenever the prior disposition of the property imparts absolute and uncontrolled ownership, and also where a clear discretion and choice to act, or not to act, is given, equity will not construe a trust from the language employed."

In Mills v. Newbury, 112 Ill. 123, 54 Am. Rep. 213, the court, construing the clause, "I devise and bequeath to her [the mother] all my property, both real and personal of every kind and nature, upon the express condition, however, that she devise by will, to be executed before receiving this bequest, so much thereof as shall remain undisposed of or unspent at the time of her decease, to such charitable institution for women in said City of Chicago, as she may elect," held that this did not constitute a residuary clause, and that no trust was created, for the reason that the subject was uncertain. To the same effect are: Winne v. Hawkins, 1 Bro. Ch. 179; Beachcraft v. Broome, 4 Term R. 441; Attorney v. Hall, Fitz. 314; Flint v. Warren, 15 Sim. 625; 1 Jarmon on Wills, 363; 2 Redfield on Wills, 391; Coulson et al. v. Alpaugh, 163 Ill. 293, 45 N. E. 216; Hill on Trustees, 119; Howard v. Carusi, 109 U. S. 725, 3 Sup. Ct. 575, 27 L. Ed. 1089; Story, Eq. Jur. § 1070; 2 Pom. Eq. Jur. §§ 1014–1017.

The provision now sought to be enforced relates to "her property," and requests that the wife divide the same at her death as she may think best. Whether this clause refers to all his brothers and sisters, or only those who might be in need, is not definitely stated. Manifestly, the only way in which she could make division of any kind, outside of the rules of descent, would be by some instrument conveying the property subject to her life estate, or by will. Thus it is apparent that whatever title complainants now have must come through her. Mrs. Sawyer was not requested to act in her lifetime, but at her death. It is plain that no title could vest in complainants, or any of them, until she acted, for it is termed "her" property. The clause in question includes not only property devised from testator, but all the property she has at her decease. She was at liberty to divide the same as "she may think best." If this means anything, it means that she had the option to give to some more, and to others less, or nothing at all. It makes no provision for the death of any of the brothers and sisters during her life. There is to my mind an utter lack of the necessary conditions upon which to raise a precatory trust. The language used, in my judgment, created an absolute estate in the wife.

For these reasons, and for those previously stated, the demurrer will be sustained.