PEARSON, Judge.
The appellant,' Maulé Industries, Inc., filed its complaint in the circuit court *38 against the appellee, Jerome J. Cohen, d/b/a Jerome Construction Co., to collect the alleged unpaid balance due under a building material purchase contract. Cohen answered the complaint denying liability and raising the two affirmative defenses of payment and the statute of limitations. The cause came to trial and at the close of plaintiff’s case the defendant’s motion for directed verdict was granted. Final judgment was entered and this appeal followed.
The trial judge in the final judgment entered set forth a statement of the facts that he found to be true from the case of the plaintiff.[1]
The final judgment set forth the following principle of law as the basis for the directed verdict:
“The Court therefore finds, as a matter of law and as a matter of fact, that the plaintiff elected to ignore Pierce Construction Company and the defendant in this cause and carried on separate negotiations with the prime contractor and with the surety on the defendant’s bond, and that upon arriving at a satisfactory figure, the plaintiff thereupon released and discharged the defendant’s surety company from any further liability by virtue of its becoming a surety on the defendant’s bond. And the Court further finds that the release of the surety company, under the circumstances as reflected by the evidence, constitutes a valid release as to the defendant Jerome J. Cohen, doing business as Jerome Construction Co.”
The appellant points out first that the court directed a verdict upon the affirmative defense of “release” which had not been pled by the defendant. Secondly, the ap *39 pellant urges, that the defense of release was not available to the defendant upon the facts as found by the trial judge. Briefly stated the precise issue raised by the facts in this case is: Does the release of a surety by a creditor without the principal debt- or’s consent release the principal debtor? The trial judge determined that such a release of the surety did release the principal debtor. We hold this to be error and reverse.
The general- rule is that the discharge of a surety does not discharge a principal. This rule was enunciated by the Supreme Court of the United States in City of New Orleans v. Gaine’s, 138 U.S. 595, 11 S.Ct. 428, 34 L.Ed. 1102. It has been recognized and affirmed by our own Supreme Court in the case of Feiner’s Organization v. Caffina, Fla.1955, 77 So.2d 852. Further authority may be found in cases cited at 50 Am.Jur., Suretyship, § 102; 72 C.J.S. Principal and Surety § 245; Steam’s Suretyship § 6.41 (5th Ed.1951).
Recognizing the general rule as above set forth we have examined the record particularly in light of the findings of the trial judge in the final judgment in order to determine if these facts are so peculiar that justice requires the application of a different rule. A proper analysis of the suretyship triangle reveals beyond question that the principal debtor was not prejudiced by his creditor’s release of his surety. By accepting a partial payment from the surety the creditor has penalized himself and has not damaged the principal debtor. This is true because the principal debtor is at all times liable for the entire and the full debt. He is in no way relieved from any responsibility whatsoever by the fact that he has a surety who is secondarily liable. Throughout the relationship growing out of the purchase contract the principal debtor remains primarily liable for the full amount of his debt to the supplier less payments made by himself or surety. This obligation is created by the contractual, relationship established between the creditor and the debtor. Although consideration may be given by the creditor to the presence or absence of a surety in weighing as a business decision the advisibility of contracting in the first place; it is immaterial to the question of primary liability of the principal to his creditor.
Having determined that the final judgment is erroneous upon the substantive law above discussed, it is unnecessary to discuss the procedural aspects of the case. The final judgment is therefore reversed and the cause remanded to the trial court for trial.
Reversed and remanded.
HORTON, C. J., and CARROLL, CHAS., J., concur.

. “On or about January 28, 1955, Plaintiff and Defendant entered into a verbal requirements contract by which it was understood that the Plaintiff was to supply the Defendant with all construction material needed by Defendant to fulfill his obligations as a subcontractor under certain specified government contracts for work to be done at the Homestead Air Force Base, Homestead, Florida.
“The Defendant was bonded on the job by the Capital Indemnity Insurance Company of Indiana.
“Deliveries commenced and Defendant undertook construction under said government contracts. On or about the latter part of October, 1955, the Defendant defaulted on the job and advised the Plaintiff to look to Capital Indemnity for payment of the balance due at that time, which was in the approximate sum of $52,756.06. Plaintiff thereupon entered into negotiations with Capital Indemnity of Indiana, Jefferson Construction Co., the prime contractor on the job, and Maryland Casualty Company, Jef-erson’s surety company. This resulted in certain payments being made by the Jefferson Construction Co. and the Capital Indemnity Insurance Company to the plaintiff, to wit: $75,000.00 from Jefferson and $50,000.00 from Capital. In return for said payments, plaintiff executed a full and unconditional release to Jefferson Construction Co., to Maryland Casualty Company, the surety on Jefferson Construction Co.’s bond, and to the Capital Indemnity Insurance Company, the surety on the defendant’s bond and the surety on the bond of Pierce Construction Company (a corporation operated by a close relative of the defendant, Jerome J. Cohen). The release was introduced as one of plaintiff’s exhibits. The evidence further discloses that the plaintiff, in applying the funds received from Jefferson and from Capital, paid off in full the claim that it had against Pierce and applied the balance on the account of Jerome Construction Co., which said balance was in the sum of twelve-thousand and some odd dollars. It affirmatively appeared from the evidence that all negotiations between the plaintiff and Jefferson Construction Co. and Capital Indemnity Insurance Company were carried on by representatives of Maulé Industries, that neither Pierce Construction Company nor Jerome Construction Co. were advised of the negotiations and neither did they consent to the settlement or compromise figure agreed upon between Maulé Industries, as the claimant, and Jefferson Construction Co. and Capital Indemnity Insurance Company, as obligors.”