FIRST NAT. BANK OF SEATTLE v. CITY TRUST, SAFE DEPOSIT &
SURETY CO. OF PHILADELPHIA et al.

(Circuit Court of Appeals, Ninth Circuit. February 24, 1902.)

No. 719.

1. PRINCIPAL AND SURETY—RIGHTS OF SURETY—SUBROGATION.

A surety on the bond of a contractor with a city for public work, who
assumes and completes the work after its abandonment by his principal,
is subrogated, so far as necessary to protect him from loss, to all rights
which the city might have enforced against the contractor if it had de-
clared the contract forfeited, and completed the work itself.

2. SAME—COMPLETION OF CONTRACT BY SURETY—EFFECT OF ASSIGNMENT OF
PROCEEDS BY PRINCIPAL.

The bond of a contractor with a city for paving was conditioned for
the completion of the contract and the payment of all claims against
the contractor for labor and materials. The contract provided for
monthly payments of 70 per cent. of the estimates as the work pro-
gressed, and the retention by the city of 30 per cent. until after comple-
tion of the contract, to secure the payment of laborers and material men.
The contractor abandoned the work, having earned about $3,900, which
was unpaid, and leaving outstanding claims for labor and material
amounting to $3,100. The city called upon the surety, which assumed
and completed the contract, paying all claims against the contractor for
labor and materials. Prior to the abandonment of the work, the con-
tractor had borrowed money from a bank, and assigned to it all sums
to become due from the city during certain months, and the bank had
notified the city of the assignment. Held, that the surety was sub-
rogated, to the extent necessary to protect it from loss, to all the rights
which the city might have asserted against the fund in its hands, and
that such rights were not limited to the 30 per cent. reserved under the
contract, but extended to the entire fund, which the city might, notwith-
standing the assignment, have declared forfeited, and applied in reduc-
tion of its damages, if it had been compelled to complete the work,
which it must. have done but for the action of the surety; that the
surety's right was superior in law and equity to that of the bank under
its assignment, by which it took no greater rights than those of the con-
tractor, as against either the city or surety.

McKenna, Circuit Justice, dissenting.

Appeal from and in Error to the Circuit Court of the United States
for the Northern Division of the District of Washington.

The appeal in this case is taken from an order dismissing the bill of in-
tervention of the appellant, the First National Bank of Seattle, in a suit
begun by the City Trust, Safe Deposit & Surety Company of Philadelphia
against Frank H. Paul, as comptroller of the city of Seattle, to compel the
issuance of city warrants to the complainant in the bill for work done upon
a contract for a city improvement, which contract had been made between
McCauley & Delaney, contractors, and the city of Seattle, and which, upon
the abandonment thereof by said contractors, had been completed by the
complainant, who was their surety. The intervener denied the right of the
surety company to the warrants, and asserted its own right thereto upon
the ground that the contractors had, in consideration of moneys to be ad-
vanced by the intervener, assigned to it certain moneys to be earned by
them under said contract. The facts of the case, as alleged in the two bills,
are these: On or about August 2, 1900, McCauley & Delaney entered into a
paving contract with the city of Seattle. They applied to the First National
Bank of Seattle for a loan of money to enable them to carry out their con-
tract, and accompanied their application with a promise to provide a re-
liable surety company bond to the city, and to assign to the bank all moneys,

bonds, and warrants that should become due from the city under the contract for the months of August, September, October, and November, 1900. Upon those conditions the bank promised to loan and advance the necessary money. The contract for the street improvement provided that on or before the 20th day of each month bonds or warrants should be issued for 70 per cent. of the contract price of the estimated amount of the work returned by the city engineer as having been performed during the preceding month. The remaining 30 per cent. was to be retained to secure the payment of laborers and material men until 30 days after the completion of the work. The City Trust, Safe Deposit & Surety Company of Philadelphia became the surety on the bond which was entered into with the city for its own use and for the use of all persons who should perform work or labor in the execution of the contract. On August 2, 1900, the contractors, in writing, assigned to the bank the proceeds of the contract for the months of August, September, October, and November. The consideration of the assignment was the sum of $2,000, then advanced, and other moneys thereafter to be advanced, including the money to be paid to procure a surety company's bond. The bank subsequently, as the work progressed, advanced $5,000, making a total of $7,000, which was intended to be secured by the assignment, no part of which has been repaid. The bank, upon obtaining the assignment, served upon the comptroller, and caused to be filed in his office, a written notice that it held the assignment, and that it would present an order for the warrants to be issued in payment of the amount so assigned and so to become due. The notice was written on an official blank furnished by the comptroller for the use of banks and others who advanced money under like circumstances. The city engineer subsequently estimated that the work done on the contract for the months mentioned in the assignment amounted to $12,-619.14. But in the meantime, early in October, the contractors discontinued the work, and shortly thereafter the city called upon the surety company to complete the same, to which it assented. Before it assumed the contract of its principals, it had notice of the assignment to the bank. At the time when the contractors abandoned their contract there had been earned thereunder $3,924.31, as shown by the estimates made by the city engineer. The surety company completed the contract, and paid the expenses thereof, and all the unpaid bills incurred by the original contractors. The bank, in its bill of intervention, alleged that when the contractors abandoned the contract there was due to certain laborers and material men sums of money, the amount of which was unknown to the bank, but which sums would have been liens upon no more than 30 per cent. of said sum of $3,924.31 so earned by the contractors according to the terms of the contract. To the bill of intervention the trust company and the comptroller of the city of Seattle each demurred for want of equity. The demurrers were sustained, and the bill of intervention was dismissed.

Walker & Munn, for appellant.

John P. Hartman, for City Trust, Safe Deposit & Surety Co.

W. E. Humphrey and Edward Von Tobel, for appellee.

Before McKENNA, Circuit Justice, and GILBERT and ROSS, Circuit Judges.

GILBERT, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The appellant earnestly contends that its bill of intervention presents ground for equitable relief at least as to $2,747, or 70 per cent. of $3,924.31, the amount which the city admitted to have been the value of the work done by the contractors at the time when they abandoned their contract; and it insists that the sum of $2,747 is beyond any doubt payable to it under its assignment; that that sum was earned by the contractors by work done in a public improve-

ment which was accepted by the city, and for which the city stood ready to pay, notwithstanding that ·claims and liens for work done and material furnished in said improvement to the amount of $3,168.38 were outstanding and unpaid; that the city never declared a forfeiture of the contract, and that in fact the contract never was forfeited, but that the surety company had simply undertaken and completed the work, which it was bound to do under its bond; that the appellant's equities are prior to those of the surety company and to those of the unpaid claimants and lienholders, for the reason that the arrangement to obtain money from the bank was entered into by the contractors before they had obtained the bond from the surety company, and that when the surety company took up the contract it did so with knowledge of the assignment to the bank, and subject thereto.

The doctrine announced in Prairie State Nat. Bank v. U. S., 164 U. S. 227, 17 Sup. Ct. 142, 41 L. Ed. 412, must control the decision of these questions. The controversy in that case was between a bank which had advanced money to Sundberg & Co., the contractors who had undertaken to erect a custom house for the United States, and Hitchcock, the surety on the contractors' bond, and it concerned the 10 per cent. of the contract price, which, by the terms of the contract, had been reserved by the government from the current payments until after the completion of the contract. The bank based its claim to the fund upon advances which it had made to the contractors in consideration of a power of attorney from the latter authorizing it to receive from the United States the final payment. Some three months after the execution of this power of attorney, the contractors defaulted, and Hitchcock, the surety, thereupon completed the contract, and disbursed therein about $15,000 in excess of the current payments from the government. The bank asserted an equitable lien upon the deferred payment, which it claimed was prior and paramount to the lien of the surety, since the claim of the latter arose only at the date when he undertook the completion of the contract. The court held, however, that the claim and equity of the surety arose when he entered into the contract of suretyship, and that his right to the reserve fund was prior and paramount to that of the bank, and said that the stipulation in the building contract for the retention until the completion of the work of a certain portion of the consideration "is as much for the indemnity of him who may be guarantor of the performance of the work as for him for whom the work is to be performed; that it raises an equity in the surety in the fund to be created." The court further said:

"If the United States had been compelled to complete the work, its right to forfeit the 10 per cent. and apply the accumulation in reduction of the damage sustained remained. The right of Hitchcock to subrogation, therefore, would clearly entitle him when, as surety, he fulfilled the obligation of Sundberg & Co., to the government to be substituted to the rights which the United States might have asserted against the fund."

In so ruling, the controlling consideration was, not that the deferred payment had been, by the words of the contract, reserved, but that the money in controversy was still in the hands of the gov-

ernment, subject to its power to apply the same upon the unfinished contract if it had undertaken the completion thereof.

Applying these principles to the present case, it is clear that the lien of the surety company upon all funds now retained in the possession of the city, and applicable upon the contract, had its inception at the time when it entered into the contract of suretyship, and that subsequent to that date the contractors, McCauley & Delaney, had no power to create a lien upon the payments to be made by the city, and make it paramount to the lien of the surety. That the right of the bank in this instance is subsequent to the surety's lien is not to be questioned. The arrangement which is said to have been made between the bank and the contractors just prior to the execution of the bond cannot affect the rights of the surety. That arrangement, so far as the pleadings inform us, was not in the form of a binding agreement, and was not obligatory upon either party thereto; and, if it were, it could not take precedence of the lien of the surety by virtue of the bond which it entered into simultaneously with the execution of the contract, unless it was known and assented to by the surety. There is no intimation that the surety assented to or had notice of such an agreement. One who becomes a surety for the principal upon such a contract as is disclosed in this case may not be deprived of his lien by the secret contract or agreement into which his principal may have entered. By abandoning the contract the contractors lost the right to compel the city to pay them any sum whatever on account of the work which they had done. Their assignee, the bank, stood in no better position than they. The city undoubtedly had the right to declare the contract and all unpaid sums which it had promised to pay thereunder forfeited. That it had this right is not disputed, but it is said that the city has not exercised it, and that, therefore, the right cannot avail the surety. But the true inquiry is, not what has the city done, but what had it the right to do? It had the right, if it had itself assumed the completion of the abandoned work, to retain for its own protection not only the stipulated 30 per cent., but all sums then due or earned under the contract, and no assignment by the contractors could defeat that right. Among the obligations of the contractors was included the duty to pay all claims for work, labor, and material. The surety, by the terms of its bond, had guarantied that the contractors would pay "all just claims for work, labor, or material furnished in the execution of the contract." The surety's obligation to pay liens and claims outstanding when the contract was abandoned was not limited in extent to the reserved 30 per cent. of the money then earned by the contractors, but it included the full sum of the unpaid claims, amounting to $3,161.38. In the Prairie State Nat. Bank Case the court expressly declared that the right of Hitchcock, the surety, was not limited to the 10 per cent. reserved, but that it was a right to "resort to the securities and remedies which the creditor, the United States, was capable of asserting against the debtor, Sundberg & Co." So, in the case before the court, when the surety assumed the burden of the contract, it stood in the position of the city, so far as the unpaid stipulated sums under the contract were concerned, and it

acquired the city's right so far as it might be necessary to resort to the same to reimburse it for all its outlay in completing the work. We think the right of the surety company went that far, and no farther; and if it appeared upon its own bill herein, or in that of the intervener that the money of the latter so advanced to the contractors under its agreement went into the improvement, so that the surety company acquired the benefit thereof, and availed itself of the same, and thereby acquired, on the completion of the contract, a profit,— or, in other words, if the moneys which are now retained by the city, if paid to the surety company would more than repay it the total amount of its expense incurred in completing the contract,— equity would require that the excess be paid to the bank, rather than to the surety. The right of subrogation has its origin not in contract, but in equity, and it goes no farther than the strict demands of equity and justice demand. The equitable lien of the surety company extends only so far as may be necessary for its reimbursement. The remainder of the fund, if any there were, would belong to the bank by virtue of its assignment. In 24 Am. & Eng. Enc. Law, p. 191, of the nature of the right of subrogation, it is said: "Being a creature of equity, it will not be enforced where it will work injustice to the rights of those having equal equities;" and on page 192 it is said that subrogation will not be permitted "in favor of one who will thereby be permitted to derive an advantage therefrom, or to establish his claim through his own wrong or negligence, or inequitable or illegal taking." It appears from the bill of the surety company that the amount of the unpaid labor and the unpaid liens for material which had been incurred by the contractors at the time when they abandoned the contract was $3,161.38. The difference between that unpaid sum and $3,924.31, the amount which the city admitted to be the value of the improvement which had been made at the time of the abandonment of the contract, is $762.93, which latter sum represents the amount of the money advanced so by the bank which actually went into the improvement over and above the unpaid expense thereof at the time of the abandonment of the contract; but there is no averment and no facts are pleaded in either bill from which it may be deduced that the deferred payments on the contracts will be more than sufficient to make the surety company whole, and repay all its outlay in completing the total work. We find no equity, therefore, in the intervener's bill.

Counsel for the appellant cite and rely upon the decision of the supreme court of the state of Washington in Dowling v. City of Seattle, 22 Wash. 592, 61 Pac. 709,—a decision which it may be conceded announces a doctrine directly at variance with that of Prairie State Nat. Bank v. U. S. In the Dowling Case it was held that orders drawn by a contractor on sums to become due on a contract with the city carried an equitable assignment of the fund, and, being valid when made, they were not rendered invalid by the default of the contractor, or by the assumption of the contract by the surety. The argument of the court was that, inasmuch as the city asserted no claim of right in the fund, there existed no right to which the

surety could be subrogated; and that, as the contractor could not justly claim that his own assignments were invalid, neither could his bondsmen, who had assumed the performance of the contract, so claim. The decision in that case does not involve, and neither does the present case, so far as the foregoing discussion goes, involve, any question of the construction of a provision of the charter of the city of Seattle, or of the constitution or the statutory law of Washington. That decision, therefore, does not become a precedent which we are bound to follow. We find no error in the decision of the circuit court sustaining the demurrers and dismissing the bill of intervention.

The decree will be affirmed.

McKENNA, Circuit Justice (dissenting). I am unable to concur in the conclusion of the court. I think the bill of intervention states a cause of action for at least $2,747. There was due the contractors, McCauley & Delaney, when they abandoned their contract, the sum of $3,924.31. Thirty per cent. of that sum the city had a right to retain, and to that 30 per cent. only—to the rights of the city in that 30 per cent.—was the surety company subrogated. Seventy per cent. of the sum was a vested substantive right of the contractors, and passed by their assignment to the bank. This view is sustained, in my opinion, not opposed, by the case of Prairie State Nat. Bank v. U. S., 164 U. S. 227, 17 Sup. Ct. 142, 41 L. Ed. 412. In that case, as in this, the controversy was between assignees of a contractor and a surety on the bond of such contractor, and the surety prevailed. But the assignment in that case was void because given in violation of section 3477 of the Revised Statutes of the United States. In the case at bar the assignment was and is valid. In that case, therefore, the rights of the parties were held to be equitable only, and that of the surety was held to be the superior. What was the equity of the surety? A right to the 10 per cent. in subrogation to the rights of the United States in that percentage. In the case at bar the surety company is not only subrogated to the right of the city to the 30 per cent. which the city had a right to reserve, but to the 70 per cent. of the sums due which the city had no right to reserve, and which could be and was legally assigned.

The demurrer to the bill of complaint should have been overruled.