BOARD OF COUNTY ROAD COMMISSIONERS OF CALHOUN COUNTY *v.* SOUTHERN SURETY CO.

SUBROGATION—RIGHT OF SURETY AS AGAINST ASSIGNEE.

Where a road contractor, in his application for a surety bond to cover a number of contracts, agreed that all payments withheld under the contract should be paid to the surety, and that in the event of his failure to perform the contract the surety might take steps to obtain performance, and the county board, as authorized in the contracts, annulled some of them and re-let the work for the original price to the surety, which completed them at a loss, it was subrogated to the contractor's right to the funds withheld under the contracts performed by the contractor as against a bank to which he had assigned all amounts due and to become due under the contracts.

Appeal from Calhoun; North (Walter H.), J. Submitted October 5, 1921. (Docket No. 10.) Decided December 21, 1921.

Bill of interpleader by the board of county road commissioners of Calhoun county against the Southern Surety Company and the Jackson City Bank to determine the ownership of certain funds due under road contracts. From a decree for defendant surety company, defendant bank appeals. Affirmed.

*George W. Mechem* and *Bernard J. Onen* (*Charles F. McKenzie*, of counsel), for appellant.

*Henry F. Jacobs,* for appellee.

CLARK, J. The board of county road commissioners for Calhoun county entered into 8 similar contracts with Barnes for the building of 8 miles of road. It

On the right of surety on contractor's bond as against assignee of fund, see notes in 14 L. R. A. (N. S.) 457; L. R. A. 1918A, 937; L. R. A. 1918D, 736.

was agreed (*a*) that as the work progressed estimates would be made and that 20% thereof would be reserved by the board until the work was completed; (*b*) that the contractor might not sublet any of the work without consent of the board; (*c*) that:

"In case the contractor fails to furnish materials or execute the work in accordance with the plans and specifications, or fails to proceed with the same as rapidly as said board of county road commissioners shall deem necessary in order to complete the same within the time limit, then in either such case, upon ten days' written notice to said contractor, the said board of county road commissioners shall have the right to annul and determine such contract and enter upon and take possession of the work and complete the same either by re-letting or directly under the charge of said board of county road commissioners and if the cost of completing the work in such manner shall exceed what it would have cost under the contract, such increased cost shall be paid from any money on hand for work done under this contract, and if that be not sufficient then by the contractor and the sureties on his bond given to guarantee the faithful performance of this contract."

The defendant Southern Surety Company was the surety upon the bonds of the contractor. By the application for the bonds in the total amount of the contracts, it was agreed between the principal and surety:

"In consideration of the execution of said bond by the Southern Surety Company (hereinafter called the company), we hereby covenant with the company, its successors and assigns:    *    *    *

"*Second.* The undersigned will at all times indemnify and keep indemnified the company, and hold and save it harmless from and against any and all liabilities, dangers or loss    *    *    *    which the company shall or may, at any time sustain or incur by reason of or in consequence of having executed the bond herein applied for, or by reason or in consequence of the

execution by the company of any and all other bonds executed for us. * * * All payments specified in the above mentioned contract to be withheld by the obligee shall, as soon as the work is completed, be paid to the company * * * and this covenant operates as an assignment thereof. * * *

"*Fourth.* That in the event of the failure of the undersigned to comply with, or make due performance of, any covenant hereof, or of the contract which the company is hereby requested to secure, the company may at any time thereafter take such steps as it may deem necessary or proper to obtain due performance of such contract (and for such purpose may sublet or assign the same), or its release from all liability under any and every such bond and contract, and to secure and further indemnify itself against loss; and all damage and expense which the company may sustain or incur or be put to in obtaining such release, or in further securing itself against loss, shall be borne and paid for by the undersigned.

"*Fifth.* * * * and we agree that the company may alter * * * any instrument, and may execute renewals thereof, or other and new obligations in its place or in lieu thereof, and without notice to us, * * * and in any such case we and each of us shall be liable to the company as fully and to the same extent on account of any such altered or new obligations as if such instruments were described at length herein. * * *

"*Eleventh.* That these covenants shall be binding not only upon us, * * * but as well upon our respective heirs, executors, administrators, successors and assigns."

A true copy of the application was served upon the board. Later to secure a loan and, it is said, to provide funds for the work, Barnes assigned to the defendant Jackson City Bank all amounts due and to become due upon the contracts and directed that the payments be made to the bank. A true copy of this assignment was served on the board. With the consent of the board a contract for one mile was sublet by Barnes to Wakefield at the original contract price,

$3,200. Wakefield completed the work and was paid by the board the contract price in full. Barnes completed one contract for a mile, the price being $1,650. Of this the board paid the bank $277.20, and laborers and material men on Barnes' orders $426.32. The remainder, $946.48, has been held by the board. Barnes did work on another mile to the amount of $866.88. This was paid by the board, 20% to the surety and 80% to the bank. The board, for cause, exercising its contract right, served written notices upon Barnes and the surety of its election to annul the contracts. About four months later the board advertised the re-letting of the uncompleted work. It was bid in by such surety at the original contract price and a contract made, which was fully performed, but at a loss to the surety of $1,876.36. Barnes owes the bank upon such loan $2,073.68. Both parties claimed the fund of $946.48 held by the board. The surety began an action at law to recover the amount. The board filed a bill of interpleader and tendered the money into court. The decree directs that the money be paid to the surety. The bank has appealed.

The surety claims the fund (*a*) under the equitable doctrine of subrogation, and that the bank is a mere volunteer, and (*b*), because of the prior assignment of the 20% and having completed the work there is due it from the board 20% upon the $1,650 road and 20% on the $3,200 road sublet to Wakefield, or $970. The bank claims the fund under its assignment and says that in any event the surety may not claim 20% upon the $3,200 road so sublet; and it further says that the surety may have nothing by subrogation because it did not complete the Barnes contracts as such, and did not, upon notice of the annulment of the contracts, ask leave of the board before re-letting to complete the work, but bid for the work at the re-letting and did it under a separate independent contract.

We shall consider only the question of subrogation. Of the position taken by the bank upon this question, Judge North, after reciting the provisions of the application above quoted, correctly said:

"Not only is it true, as appears from the above quotations, that such a position is not tenable; but * * * there was no other course left open by which the Southern Surety Company could protect itself or at least minimize the damages at the time the plaintiff herein exercised its right of cancellation except to enter into a new contract on the same terms. By adopting this course of action none of the parties concerned were left at a disadvantage or profited in any way by the new arrangement. Certainly the Jackson City Bank was in no way damaged by the making of the new contract, and I believe that the equities should be worked out in the same way as though the surety had been allowed to complete the work under the original contract. Had this been done, the uniform holding of the adjudicated cases seems to be that the surety would have been subrogated and thereby become possessed of a prior right to the full compensation under the original contract as against any claim on the part of the original contractor Barnes or his assignee. To hold otherwise in this case is to allow the contractor Barnes to profit by his breach of the original contract in that he will secure payment of his debt to the Jackson City Bank with funds which in equity belong to the Southern Surety Company by reason of the loss it sustained in completing the work which Barnes originally contracted to do."

The contracts gave the board the right to annul and re-let. Under the contract between Barnes and the surety, and in equity as well, the surety completing the contracts as it did occupies no different position with respect to its right of subrogation to the rights of the board as to the fund, than if it had completed, directly without re-letting, the Barnes contracts. A case in point is *Wasco County* v. *Insurance Co.*, 88 Or. 465 (172 Pac. 126), where it was said:

"Subrogation is not a matter of strict right, nor does it necessarily rest on contract, but it is purely equitable in its nature; and, since it is a creature of equity, it will not be enforced where it will work injustice to the rights of those having equal equities. *First National Bank* v. *Surety Co.*, 114 Fed. 529, 533, 52 C. C. A. 313; *Portland Flouring Mills Co.* v. *Portland & Asiatic S. S. Co.*, 145 Fed. 687, 691; *National Surety Co.* v. *Saving Bank*, 156 Fed. 21, 84 C. C. A. 187 (14 L. R. A. [N. S.] 155, 162, 13 Ann. Cas. 421); 37 Cyc. p. 363; Stearns on Suretyship, p. 463.   In Spencer on Suretyship, § 133, the author says:

"'The right of subrogation may be generally described as the equity by which a person who is secondarily liable for a debt and has paid the same is put in the place of the creditor so as to entitle him to make use of all the securities and remedies possessed by the creditor, in order to enforce the right of exoneration or indemnification as against the principal debtor.' * * *

"The right of the county to retain a specified percentage dates from the time the contract was entered into, and it must be conceded that, until the claims for labor and material are paid, the county's right to the fund is superior to that of the bank, claiming by an equitable assignment from the contractor.

"When the insurance company fulfilled its obligations and paid the debts incurred by Cromer for labor and material, it was entitled to call upon a court of equity and be subrogated to the rights which the county could have asserted against the fund. * * *

"The equity which the surety has in such funds as are retained, under the agreement with the contractor, has its inception at the time when the surety enters into the contract of suretyship, and hence the contractor can neither supplant this equity nor strip it of its priority by borrowing money from some person not obliged to lend, and assigning the funds to secure the loan."

And in *Henningsen* v. *Guaranty Co.*, 208 U. S. 404 (28 Sup. Ct. 389), it was said:

"Whatever equity, if any, the bank had to the fund in question, arose solely by reason of the loans it made

to Henningsen. Henningsen's surety was, upon elementary principles, entitled to assert the equitable doctrine of subrogation; but it is equally clear that the bank was not, for it was a mere volunteer, and under no legal obligation to loan its money."

See, also, *Carr Hardware Co. v. Surety Co.* (Iowa), 181 N. W. 680; *Ætna Life Ins. Co. v. Middleport,* 124 U. S. 534 (8 Sup. Ct. 625); *Martin v. Railroad Co.,* 62 Mich. 458; *Dudley v. Railway Co.,* 65 Mich. 655; *Prairie State Nat. Bank v. United States,* 164 U. S. 227 (17 Sup. Ct. 142); *Hardaway v. Surety Co.,* 211 U. S. 552 (29 Sup. Ct. 202); *In re Dutcher,* 213 Fed. 908; *Illinois Surety Co. v. City of Galion,* 211 Fed. 161; *Southwestern Surety Ins. Co. v. Wells,* 217 Fed. 294; *Labbe v. Bernard,* 196 Mass. 551 (82 N. E. 688, 14 L. R. A. [N. S.] 457); *First Nat. Bank of Auburn v. Pesha,* 99 Neb. 785 (157 N. W. 934); *Des Moines Bridge & Iron Works v. Plane,* 163 Iowa, 18 (143 N. W. 866); *Town of Gastonia v. Engineering Co.,* 131 N. C. 363 (42 S. E. 857); *First Nat. Bank of Madison v. School District,* 77 Neb. 570 (110 N. W. 349); *United States v. Rundle,* 107 Fed. 227, 46 C. C. A. 251 (52 L. R. A. 505); *First Nat. Bank of Seattle v. Surety Co.,* 114 Fed. 529, 52 C. C. A. 313; *Union Stone Co. v. Freeholders of Hudson Co.,* 71 N. J. Eq. 657 (65 Atl. 466); *Stehle v. Surety Co.,* 107 Md. 470 (68 Atl. 600); *Richards Brick Co. v. Rothwell,* 18 App. D. C. 516; *Illinois Surety Co. v. Mitchell,* 177 Ky. 367 (197 S. W. 844, L. R. A. 1918A, 931).

Affirmed, with costs of this court to the surety against the bank.

STEERE, C. J., and MOORE, WIEST, FELLOWS, STONE, BIRD, and SHARPE, JJ., concurred.