## FARMERS' BANK v. HAYES et al.
### No. 5891.

Circuit Court of Appeals, Sixth Circuit.
April 15, 1932.

J. A. Fowler, of Knoxville, Tenn. (C. J. Cullom, of Livingston, Tenn., and H. G. Fowler and S. F. Fowler, both of Knoxville, Tenn., on the brief), for appellant.

T. G. McConnell, of Knoxville, Tenn. (Frantz, McConnell & Seymour, of Knoxville, Tenn., on the brief), for appellees.

Before MOORMAN, HICKS, and SIMONS, Circuit Judges.

SIMONS, Circuit Judge.

The suit arises out of a contract by appellee Hayes to erect school buildings for the board of trust, a bond executed by the surety company to guarantee performance by Hayes, subsequent loans to Hayes by appellant, an alleged assignment to it of earned estimates and retained percentages under the contract, the default of Hayes, the payment of materialmen by the surety, and the conflicting claims of the bank and surety company to the balance remaining in the hands of the trust. Appellant, as plaintiff, filed its bill in the chancery court of Tennessee; the surety, a New York corporation, removed to the federal District Court, and jurisdiction was there retained over several motions to remand, based on lack of diversity of citizenship, absence of a separable controversy, and the limitations of the assignment statute on the right to remove. The appeal raises the jurisdictional question and challenges the decree sustaining the surety company's claim to the fund.

The facts as found by the District Judge and not here disputed are as follows:

Hayes entered into a contract with the board for the erection of school buildings in Fentress county, and, in accordance with the special act of Tennessee authorizing this construction, executed a bond to the board with the National Surety Company as surety thereon, conditioned for the faithful performance of the contract, and to satisfy and pay all claims and demands incurred for same, and to indemnify and save harmless the board as owner from all costs and damages suffered for failure so to do, and to fully reimburse and pay the owner all outlay and expense incurred in making good any such default, and to pay all persons who

have contracts directly with the principal for labor or materials. The contract was referred to in the bond and made a part thereof. The surety required Hayes to make a written application for the bond, and such application embodied a provision assigning to the surety all deferred payments and retained percentages and any and all moneys and property due and payable to the contractor at the time of any breach or default in the contract, "or that may thereafter become due and payable to the undersigned on account of said contract, or on account of extra work or material supplied in connection therewith, hereby agreeing that such money and the proceeds of such payments and properties shall be the sole property of the Company, and to be by it credited upon any loss, cost, damage, charge and expense sustained or incurred by it under said bond." There was a default in the performance of the contract, which required that the buildings be completed by August 1, 1928. They were not completed until the following December, when they were completed by agreement with the surety under an arrangement whereby Sergeant A. C. York furnished the money with the understanding that it was to be repaid out of the balance in the hands of the board of trust, and it is conceded that such repayment be made.

The contract required the contractor to pay for all material and labor used in the buildings. The owner and the architect were authorized to require receipts from material furnishers as a condition precedent to payment of amounts due under the contract. They were authorized to nullify in whole or in part any estimate due the contractor if he failed to pay for materials. The contract provided for the payment of monthly estimates as the work progressed, based upon the amount of work done, materials used and on the ground. Payments were made on the architect's estimates, and the contract required the withholding of 15 per cent. of the estimates until completion. The surety, as a result of the contractor's default and failure to pay materialmen, was forced to pay a sum in excess of $19,000 to the furnishers of material used in the buildings and which the contractor had failed to pay. After the contract was signed and during the progress of the work, the bank loaned Hayes money from time to time, evidenced by his promissory notes, eight of which it now holds, aggregating the sum of $22,444.15. To secure these notes Hayes executed an instrument in writing as follows:

"March 29th, 1928

"Mr. P. L. Harned, Chairman Board of Trustees, Alvin C. York Agricultural Institute, Nashville, Tennessee.

"Dear Mr. Harned: Please mail all checks for my future estimates to Farmers Bank, Jamestown, Tennessee, until further notice and said notice is approved by said Farmers Bank.

"I further authorize said Farmers Bank to endorse said check or checks for me."
—which was submitted to the chairman of the board and accepted in the following language: "I, P. L. Harned as Chairman of the said Board of Trustees, Alvin C. York Agricultural Institute, hereby accept the above order and will comply with same."

 Appellant's first challenge to the jurisdiction of the court asserts lack of diversity of citizenship and absence of a separable controversy. To this we cannot assent. The bank is a citizen of Tennessee, and the surety a New York corporation. Each lays claim to the fund retained by the board of trust. The board makes no claim to it. In fact it sought and was given permission to pay the fund into court. A garnishee or stakeholder is a merely nominal party whose citizenship will not affect the question of jurisdiction. Salem Trust Co. v. Mfrs. Co., 264 U. S. 182, 44 S. Ct. 266, 68 L. Ed. 628, 31 A. L. R. 867; Bacon v. Rives, 106 U. S. 99, 104, 1 S. Ct. 3, 27 L. Ed. 69. The individual defendants do not claim such part of it as is here in dispute. Hayes neither claims nor can claim it. The substantial controversy to be decided is which party, the bank or the surety, is entitled to the money. If not the only controversy in the case, it is certainly a separable one. If the other defendants, all citizens of Tennessee, have any place in the case, they must be aligned as they were by the District Judge, on the side of the bank. Barney v. Latham, 103 U. S. 205, 26 L. Ed. 514.

 But the bank counts upon an assignment from Hayes and invokes the assignment clause of the Removal Act, 28 USCA § 41 (1), which provides that no District Court shall have cognizance of any suit upon any chose in action unless such suit might have been prosecuted in such court if no assignment had been made. We fail to see how the assignment to the bank can have any effect on the right of the surety to remove its separable controversy with the bank. Nor was it an assignment for the purpose of creating diversity of citizenship

which did not otherwise exist and so within the purpose to be effected and the mischief to be prevented by the clause. Holmes v. Goldsmith, 147 U. S. 150, 161, 13 S. Ct. 288, 37 L. Ed. 118; Bushnell v. Kennedy, 9 Wall. 387, 391, 19 L. Ed. 736. See, also, the recent discussion by this court in Central Paper Co. v. Southwick, 56 F.(2d) 593, decided March 8, 1932. Moreover, and this may without more be considered controlling on the second motion to remand, the Hayes letter of March 29th is not an assignment at all. At most it is merely a direction to Harned to mail checks for future estimates to the bank until further notice. It is clear that it was so understood both by Harned and the bank, and that its claimed effect as an assignment was merely an afterthought. Granted that, if the intent be clear, no particular phraseology need be used to effect an assignment, yet an intent to transfer must be manifest and the assignor must not retain any control over the fund or any power of revocation. Farmers' Bank v. Blount, 8 F.(2d) 443 (C. C. A. 4). Nor does the assignment by Hayes to the surety prevent removal of the cause to the federal court. The rights of the surety grow out of the contract and bond by way of subrogation (hereinafter discussed) independent of such assignment. The assignment is in aid of the surety's equitable right, it does not destroy it or take it away. New Orleans v. Gaines, 138 U. S. 595, 11 S. Ct. 428, 34 L. Ed. 1102; Fidelity & Deposit Co. v. Claiborne (D. C.) 11 F.(2d) 404. The District Court was right in overruling the several motions to remand.

■ Upon the merits, the right of the surety to the fund here in dispute is settled by a long line of federal and state cases, of which it is sufficient to cite Prairie State Nat. Bank v. U. S., 164 U. S. 227, 17 S. Ct. 142, 41 L. Ed. 412; Henningsen v. United States Fidelity & Guaranty Co., 208 U. S. 404, 28 S. Ct. 389, 52 L. Ed. 547; First National Bank v. City Trust, Safe Deposit & Surety Co., 114 F. 529 (C. C. A. 9); Lacy v. Maryland Casualty Co., 32 F. (2d) 48 (C. C. A. 4); Fidelity & Deposit Co. v. Claiborne Parish School Board (D. C.) 35 F.(2d) 376, affirmed by 40 F.(2d) 577 (C. C. A. 5); Ohio ex rel. Southern Surety Co. v. Schlesinger, 114 Ohio St. 323, 151 N. E. 177, note in 45 A. L. R. 371. This is on the principle that a surety who gives bond to the owner to insure performance of a building contract by the contractor is subrogated to the rights of the owner in the percentage which the owner re-

tains as security for the performance of the contract when upon default by the contractor the surety performs, as in the Prairie State Nat. Bank Case, or on the principle that when the contractor performs his obligation to the owner, but fails to pay labor and materialmen, and the surety is obliged to do so under his bond, the surety is subrogated to the liens of laborers and materialmen upon the fund reserved by the owner, as in the Henningsen Case. The distinction between the Prairie Bank and Henningsen Cases is pointed out by this court in Belknap Hardware & Mfg. Co. v. Ohio River Contract Co., 271 F. 144. But, whether in the instant case the surety's rights arise out of subrogation to the rights of the board of trust or of the equitable liens of the laborers and materialmen, the result is the same. In either case the equitable rights of the surety become fixed as of the date of the bond, and are superior to those of any holder of an after-acquired lien. Whether the lien of the surety extends only to the reserved percentage under the contract, or also to sums earned under the contract, and retained by the owner, is a question which has frequently been raised. We think it is now settled that it extends to both. Lacy v. Maryland Casualty Co., supra; First National Bank v. City Trust & Surety Co., supra; Exchange State Bank v. Federal Surety Co., 28 F.(2d) 485 (C. C. A. 8). Were there any doubt in the instant case as to extent of the surety's lien (and we think there is none), it would be resolved by the terms of Hayes' assignment.

■ We find no merit in the bank's contention that it is subrogated to the rights of laborers and materialmen whom Hayes may have paid out of moneys borrowed from it. The bank was under no compulsion to pay for labor or material under any contract with Hayes. If it made such payments it did so as a mere volunteer, and acquired no lien thereby. Prairie State Bank v. U. S., supra.

■ Finally, the bank contends that the law of Tennessee, as declared by the Supreme Court of that state in Cass v. Smith, 146 Tenn. 218, 240 S. W. 778, should govern the issues here presented. We are not certain that Cass v. Smith is in conflict with the views here presented. The court there sanctions rather than repudiates the rule of the Prairie State Nat. Bank Case, and it does not appear that there was any assignment by the contractor to the surety of any funds in the hands of the high school board

either by way of retained percentage or earned estimates. In any event the legal issues here presented are questions of general law, and, if there is any conflict, are governed by the federal law.

It follows that the decree of the District Court is affirmed.