TOWN OF RIVER JUNCTION et al. v. MARYLAND CASUALTY CO.

No. 9259.

Circuit Court of Appeals, Fifth Circuit.

March 1, 1940.

Writ of Certiorari Denied May 20, 1940.

See 60 S.Ct. 1077, 84 L.Ed. —.

Judgment reversed and cause remanded for further proceedings.

C. L. Waller, of Tallahassee, Fla., and H. M. Taylor, of Quincy, Fla., for appellants.

Francis M. Holt, of Jacksonville, Fla., for appellee.

Before SIBLEY, HUTCHESON, and HOLMES, Circuit Judges.

SIBLEY, Circuit Judge.

The Town of River Junction was building a sewerage system with aid from the Public Works Administration; Gadsden County State Bank was lending the contractor money to pay his labor and material bills; and Maryland Casualty Company was surety on the contractor's bond. Towards the end of the job the contractor got from the Bank $4,000, $400, and $400 on an assignment to it dated June 28, 1937, of his "June estimate check" and used the money to pay for labor and materials. The June check was not promptly issued, and on Aug. 18 the contractor defaulted and the surety

was called in and completed the job at an outlay of about $2,000. The Town thereafter paid the Bank its claim with interest, $5,105. The surety, in order to exonerate itself against outstanding material bills against the contractor, brought a petition against the Town, the Bank, the contractor and thirty-six materialmen, praying that the money in the Town's hands, about $10,700, which included $8,200 retained percentages under the building contract, be applied to the material bills, and the $5,105 paid the Bank be restored and likewise applied. The Town and the Bank answered separately defending the payment to the Bank, but on motion these defenses were stricken. On a motion for summary judgment, the surety's obligations to the thirty-six materialmen were disposed of, and they having been paid by the surety a decree was rendered in favor of the surety against the Town for $15,810. While no judgment was given against the Bank, it stands to lose the $5,-105, for in receiving payment from the Town it gave an indemnifying bond. The main question is whether the payment to the Bank was good as against the surety.

■ The controlling ruling is that striking the answers. Under the Rules of Civil Procedure the facts alleged must be taken as true. If no motion is made for a more definite statement, general averments must be taken at their face value. By Rule 9(b) (c), 28 U.S.C.A. following section 723c, averments of fraud and mistake only must be particularized, but the occurrence of conditions precedent need not be. Though not identical the two answers agree in substance, and are as follows:

The construction contract exhibited in the petition is admitted. It provides for a partial payment to the contractor within the first fifteen days of each calendar month for work done the preceding month on a certified estimate, ninety percent to be paid over and ten percent retained until final completion. By the 20th of the month the contractor is to pay all labor and ninety percent of the cost of materials, tools and expendible equipment delivered the preceding calendar month, and such payment is a condition precedent to receiving the next partial payment. The application by the contractor to the surety for the bond is also exhibited, though the answers say it was unknown to the defendants. In it the contractor, besides agreeing to indemnify the surety against all loss, assigns to the surety "as of the date hereof" all tools, equipment and material to be used on the job; and "in the event of claim or default under the bond all payments due or to become due under the contract" shall be made to the surety.

The answers next say that the partial payment of ninety percent to which the contractor was entitled at the end of each thirty day period was free of any trust or lien; and the surety's right to control it did not, under the contract with it, arise unless or until the contractor was in default. On June 28, 1937, when the contractor had not defaulted in his contract, and after the progress payment for the work done in the thirty day period from May 28 to June 28 had already been earned and had accrued to the contractor, but could not be paid because the engineer in charge had not made the estimate and because (the Town states) there had occurred a delay in its securing funds to pay the contractor, he went to the Bank and borrowed $4,000, $400, and $400 and used it all to pay his payrolls and material bills, for all of which the surety was liable and of which it obtained the benefit. As security the contractor executed to the Bank an order addressed to the Mayor "Will you kindly send our June Sewer Estimate cheque direct to the Gadsden County State Bank for our account when the same is ready to be paid", and on the same sheet an assignment: "For value received we hereby sell, transfer, and assign the above described cheque, or any amount thereof required to pay the sum of $4,000 and interest on same and for such further sums that the Gadsden County State Bank may advance to us for payment of labor and material." The Town was duly notified of said assignment, and acquiesced in it, neither the Town nor the Bank knowing of any assignment to the surety. The amount due to be paid on the June estimate was more than enough to pay the claims of the Bank, and it was through no fault of the Bank that the June estimate was not seasonably made and paid. The Town paid the Bank on advice that it had the better right, after the contractor had defaulted on or about Aug. 18, 1937.

■ These then are the facts before us. We are bound to take it that on July 26, when the Bank advanced its last payroll money, the contractor had not failed in any obligation. The scheme of the building contract is that at the end of each calendar month (the 25th or 28th seems to have been taken as the date) there should be an estimate made of labor and material put into the work during that month, and by the

15th day of the next month ninety percent thereof should be paid the contractor; and by the 20th he should use the money to pay all his labor and ninety percent of his material bills for the month estimated. If he should fail to do this he would not be entitled to draw the next payment. The arrangement is of vital practical importance. The ten percent retained each month has, since the decision in Prairie State Bank v. United States, 164 U.S. 227, 17 S.Ct. 142, 41 L.Ed. 412, been established to be an agreed security to be held by the owner for the protection of himself and the surety, just as though the contractor had pledged so many Liberty Bonds. This is but an application of the general principle that a surety has a beneficial interest in all collateral pledged to the creditor by the principal debtor. 50 C.J., Prin. & Surety, §§ 381, 384. In these retained percentages the contractor can give no one a right superior to that of the surety, for the surety's right dates from the making of the contract which pledged them.

█ Just as clearly the monthly progress payments are agreed to go to the contractor to be used by him in financing the work, so long as he is in no default. The surety agrees to this as a party to the building contract. This also appears in the private application for the bond, for while he stipulates therein for an immediate though secret assigment of equipment and materials on the site, he contracts for no right in these progress payments unless or until the contractor defaults or a claim is made against the surety under the bond. Until then it is the contractor's right to have and is his duty to administer these payments. This court held in Kane v. First National Bank, 5 Cir., 56 F.2d 534, 85 A.L.R. 362, on a review of the authorities, that there was no trust attached to them and that a check issued for one could be negotiated as commercial paper though the taker knew its source. The matter was again gone over in Third National Bank of Miami v. Detroit Fidelity & Surety Co., 5 Cir., 65 F.2d 548, and it was held that a bank could take assignments from materialmen and laborers it paid and succeed to their rights against the bond. We recognize, however, that a bank acquires no subrogation to claims for labor or material by the mere application of its money to them, because a voluntary lender is never subrogated, as was held in Prairie State Bank v. United States, supra. We think also that

there is probably an implied obligation on the contractor, especially if he be insolvent, not to divert money from the job, which may be enforced by the surety in equity. But that is immaterial here, for the money was not by its assignment diverted, for the proceeds of the assignment were used for a faithful furtherance of the job and for the protection of the surety.

Can the contractor arrange with his bank for cash needed for payrolls by assigning a particular progress payment already earned, to save the work from stopping till payment shall be made? Will the assignment, notified to and acquiesced in by the owner, hold good against the surety if the contractor defaults in a later month? If the answer is No, banks cannot safely lend. Laborers must wait or quit. Contractors must more often fail, and sureties be more often called in, with added delay and expense to the work. The whole matter of public contracts will be seriously affected. If the answer is Yes, the work and the workers will be facilitated and no one injured. The surety cannot object on the ground that the contractor might divert the money, for he has agreed to trust the contractor until he defaults. In the present case the surety got the full benefit of the arrangement, and if his permission had been asked in advance we cannot doubt it would have been given.

██ It is the assignment of the June estimate that gives the Bank standing. The meaning of the whole instrument is that the entire June payment is to go to the Bank, which is to take out what it may advance and account to the contractor for the remainder. There is no splitting of the demand against the Town. It being the assignment of an already existing obligation, and of the whole of it, it is a legal rather than an equitable assignment, though the latter would be equally good when supported as here by a present valuable consideration. Notice of it was duly given to the Town, which acquiesced. The Bank's right to receive the money became fixed, and it should have been paid by July 15. It was no longer due to the contractor. His default thereafter could not undo the assignment. His failure to make and have approved an estimate, and the Town's failure to have funds to pay, ought not to defeat the assignment. Equity should regard that as done which ought to have been done. Theatre Realty Co. v. Aronberg-Fried Co., 8 Cir., 85 F.2d 383, page 387,

and cases cited. It being established that over $5,105 was really due to be paid and has now been by the Town paid in recognition of the assignment, the Town ought not to have to pay the surety again. The more clearly is this true since the money involved actually went to pay only what the surety would have owed if the assignment had not been made.

■ The surety in the petition set up as a prior assignment to it the agreement in the application for the bond about the payments due the contractor. As before pointed out, it was not to be operative till default, and Town and Bank were without notice of it till months after the Bank's rights became fixed. This money was not then due to the contractor but to the Bank. Moreover as between successive assignments of the same right the assignee first giving notice prevails. 4 Am.Jur., Assignments, § 107. Especially should this be so when the assignment of which notice is first given is a legal one for full value and the second is only an equitable assignment attempted before the thing was in existence; because a bona fide purchaser for value without notice will not be interfered with by a court of equity.

Of the authorities urged to the contrary no case is like this. The leading case is Prairie State Bank v. United States, 164 U. S. 227, 17 S.Ct. 142, 41 L.Ed. 412. It dealt with the reserved percentages and held them to be pledged from the date of the contract as a security in which the contractor could not give his bank a claim superior to the surety's right of subrogation. The bank's assignment was void because a claim against the United States is not assignable. As a matter of equitable right the bank had no subrogation because a voluntary lender. No one now doubts any of these holdings. None applies to this case.

In Henningsen v. United States F. & G. Co., 208 U.S. 404, 28 S.Ct. 389, 52 L.Ed. 547, a contract with the United States was again involved, and the bank had a general assignment of "all payments due or to become due". The assignment was void. The Prairie State Bank case was followed in holding the surety entitled to subrogation, but the bank as a volunteer not so entitled.

Martin v. National Surety Co., 300 U.S. 588, 57 S.Ct. 531, 81 L.Ed. 822, again involved a government contract and the contractor's assignments were void, but there were agreements which were given effect against a bad faith interloper, the contractor and surety both being insolvent, to protect the materialmen. The surety took nothing.

A case from Florida is Union Indemnity Co. v. City of New Smyrna, 100 Fla. 980, 130 So. 453, 455. There is no Florida statute regarding assignments except that the true party in interest may sue. General authorities are considered applicable. McClure v. Century Estates, 96 Fla. 568, 120 So. 4, 9. In the New Smyrna case the court held the assignment "conveyed to the bank no greater right in the funds in the hands of the city than that right which [contractor] had at the time of making the assignment." The case involved only the retained percentages, which the contractor had no right to affect. The bank's assignment was to secure an antecedent debt. It was of $1,000 out of the June estimate, and the contractor defaulted and the surety took over the job by June 22, so that the contractor never earned what he had partially assigned.

First National Bank of Dothan v. American Surety Co., 5 Cir., 53 F.2d 746, held only that a bank which loaned money to a contractor to pay his bills could not sue the surety on the bond. It had no subrogation to the claims so paid.

First National Bank v. City Trust Co., 9 Cir., 114 F. 529, is noteworthy for its mistaken assumption that under the decision in the Prairie State Bank case there is no difference between the retained percentages and progress payments. Justice McKenna, who was presiding, dissented and accurately stated the ruling in the Prairie State Bank case. The majority, however, were probably right in thinking the bank had not a good assignment, for it was an equitable assignment in solido of four months' estimates made before any was earned, and only two months passed before the contractor defaulted and the surety took the work over.

In Farmers' Bank v. Hayes, 6 Cir., 58 F. 2d 34, 37, the court held the bank had no assignment but only a revocable order to mail checks to it till further notice. Its broad statement that the "lien of the surety" extends not only to the retained percentages but also "to sums earned under contract and retained by the owner" cannot be sustained as to an earned sum validly assigned to another by the contractor before default, with notice to and acquiescence by the owner; especially where the surety receives the full benefit of the assignment.

In the case at bar it is argued that enough appears from what was proved on the hearing for summary judgment and in the answers to interrogatories for discovery to show the surety finally paid in 1938 $17,000 or more of the contractor's material bills, and some of these must have existed and been in default in June, 1937. The allegations of the stricken pleadings cannot be thus overridden. When the motion for summary judgment under Rule 56 was heard the stricken allegations were no longer a part of the pleadings. That rule contemplates that the judge shall take the pleadings as they have been shaped to see what issues of fact they make, and then shall consider the "depositions, and admissions on file, together with the affidavits" to see if any such issues are real and genuine. If they are not, judgment is given without further trial. In this case there was left no material issue in the Town's and Bank's answers. Oral evidence was heard as to the claims of the other thirty-six parties over the objection of the Town and the Bank. Its reception on summary judgment was irregular, but the irregularity was cured by the ruling of the court that it was not admitted against the Town and Bank. The evidence cannot now be considered against them. So also the interrogatories for discovery propounded under Rule 33 to the Town's Mayor and the Bank's President are not available. Neither the Town nor the Bank had notice of or opportunity to cross the interrogatories asked the other. The Mayor especially answered only from information and not knowledge. No original documents were produced but only copies. The admissions of one party would not bind the other. Such interrogatories are exploratory, intended to find out facts and witnesses and documents so the propounder may thereafter prepare to prove his case in an orderly manner. They are not "depositions" referred to in Rule 56 as to be considered on summary judgment. They were in fact never offered in evidence, and nothing in them would have been admissible over objection if offered. And if admitted there would still be no proof that the contractor was in default before Aug. 18, 1937.

On the facts properly before us the surety's equitable rights were not superior to the Bank's legal right acquired for full present value and without notice. If what is alleged be proven, the Town ought not to be adjudged liable to pay the surety again what has already been paid out for the surety's protection and benefit.

For error in striking the portions of the answers of the Town and the Bank the judgment is reversed and the cause remanded for further proceedings consistent with this opinion.

HUTCHESON, Circuit Judge (dissenting).

The question to be determined by us on this appeal is simply, under the admitted and undisputed facts, which of two contestants, the surety on the construction bond, or a bank which advanced money to the contractor, has the superior right to moneys, $5,105.77, of the $15,810.08 unpaid on the contract and in the hands of the Town of River Junction, the owner, when the surety took over and completed the contract. These moneys the town paid the bank after receiving from it securities for the town's protection and indemnity, long after the surety had completed and the town had accepted the work called for by the contract, and with full knowledge that the security claimed all the moneys in its hands. The moneys so paid were paid the bank as the principal and interest of three notes aggregating $4,800, one for $4,000 dated June 28, the others dated July 16 and 24, for $400 each, given by the contractor for moneys loaned him by the bank on those dates and purporting to be secured by an assignment of the June Sewer Estimate check as per letter [1] and assignment

---

[1] Dr. B. F. Barnes, Mayor
River Junction, Fla.
Dear Dr. Barnes:
Will you kindly send our June Sewer Estimate Cheque direct to the Gadsden County State Bank for our account when the same is ready to be paid.
Yours very truly,
Lackawanna Construction
Company
(S) by Homer G. Bishop,
Secretary-Treas.

This agreeable to Town of River Junction,
For value received, we hereby sell, transfer and assign the above described cheque or any amount thereof required to pay the sum of Four Thousand Dollars and interest on the same and for such further sums that the said Gadsden County State Bank may advance to us for payment of Labor and Material.
Lackawanna Construction
Company
(S) By Homer G. Bishop,
Secretary-Treas.

of June 28. The bank and the city conceded below and concede here that as to so much of the moneys in the hands of the town as represented retained percentages, the surety's claim attached as of the date of its execution of the bond, and could not be displaced by any act of the owner, the contractor or his assignee. They insisted below however, and insist here, that all of the moneys in the owner's hands, when the notes and assignments were given, over and above the retained percentages, were free of the surety's claims and that the contractor might freely draw and assign them, and the town, as freely pay the contractor or his assignee without accountability of any kind to the surety on the part of the town, the contractor or the assignee. They especially insisted that the particular moneys in question were earned by and due to, the contractor when the assignment was made, and, though still in the city's hands unpaid, they were, because earned, completely his moneys and subject to his control, with no right of the town or the surety to withhold them from him.

The surety on its part insisted below and insists here, that upon settled principles, established by the cases set out below,[2] the contractor, on the undisputed facts, had no right in or to unpaid funds in the hands of the town, which it could enforce against either the town or the surety, and having none, it could assign none. In support of this position, the surety pointed below and points here; to the obligations of its bond that it would guarantee the performance of the contract, including the payment of all claims for labor and materials; to its rights of exoneration and subrogation, equitable and conventional as to the contractor, and equitable as to the owner; to the provisions of the contract that the contractor should provide all labor and materials, and for periodical payments by the town to the contractor;[3] to the fact, self-evident on the record, that when the contractor made his notes and assignment to the bank, there were unpaid bills for materials furnished the job in excess of all moneys then remaining unpaid on the contract; to the fact that no June estimate or any other estimate after that, except the final, was ever made up by the contractor for approval by the engineer, and that no further moneys coming to the contractor on the job, because of his default in paying material bills, the city on August 4, called on the surety to see that the job was finished, and thereafter no money was paid to the contractor on account of the work except small sums paid it from time to time for payrolls on orders of the surety; to the fact that after the surety had taken the job completely over, and the contractor made up his final estimate on October 8, 1937, it showed total bills, lienable for materials actually incorporated in the job, unpaid of $17,964.40, a sum in excess of all the moneys in the town's hands, to complete the job and pay the bills, and other bills not representing materials actually used on the job, of $6,442; to the fact that after the town called upon it on August 4 to see to the completion of the job it did thereafter, for part of the time, in the name of the contractor and for the balance of the time in its own name, finish the job and pay all material claims against it, with an out of pocket outlay of $20,194.68. Finally, it points to the fact that long after the work had been completed, towit, in May of the following year, and accepted and, subject only to the payment of all material claims against the job, the surety became entitled to the balance in the town's hands, the town voluntarily, but only after taking full indemnity against the surety's claim, paid the bank $5,105.77 of

---

[2] Prairie State National Bank v. United States, 164 U.S. 227, 17 S.Ct. 142, 41 L. Ed. 412; Henningsen v. United States Fidelity & Guaranty Co., 208 U.S. 404, 28 S.Ct. 389, 52 L.Ed. 547; Martin v. National Surety Company, 300 U.S. 588, 57 S.Ct. 531, 81 L.Ed. 822; Union Indemnity Company v. City of New Smyrna, 100 Fla. 980, 130 So. 453; First National Bank of Dotham v. American Surety Co. of New York, 5 Cir., 53 F. 2d 746; Bank of Ruleville v. Maryland Casualty Co., 5 Cir., 23 F.2d 378; Farmers' Bank v. Hayes, 6 Cir., 58 F.2d 34; Id., 287 U.S. 602, 53 S.Ct. 8, 77 L.Ed. 524; First National Bank v. City Trust, Safe Deposit & Surety Company, 9 Cir., 114 F. 529.

[3] The contract provided among other things, that the contractor should provide all labor, materials, etc., and should pay ninety per cent. of the cost of all materials on or before the 20th day of the month, following the delivery thereof to the project. It also provided for periodical payments by the town to the contractor within the first 15 days of each calendar month "for work performed during the preceding calendar month, on estimates certified by the contractor, the owner and Government inspector."

the $15,810.08, which it had been withholding to secure the performance of the contract. The surety insisted below, it insists here, that this was in violation of its right to succeed, upon its discharge of the contractor's obligations, to the town's position against the contractor and the contractor's position against the town, as of the date of the execution of the bond, authorities in note supra. It relied below, it relies here, upon the holding in the Prairie Bank case, 164 U.S. at page 240, 17 S.Ct. at page 147, 41 L.Ed. 412, that the contractor could not transfer to the bank any greater rights in the fund than it itself possessed, its rights were subordinate to those of the town and the surety. And that in the Union Indemnity Company case, 130 So. at page 456, "In this case the surety was bound to pay the claims for labor and material furnished in the construction contracted for. *When the surety undertook the completion of the construction, it became subrogated, to the extent necessary to protect it from loss, to all the rights which the city might have asserted as against the funds in its hands. Such right attached at the time the contract of surety was made, and is one of the valuable rights which accrued to the surety upon its becoming obligated as such, and these rights cannot be defeated by an assignment of the fund in the hands of the owner to secure a loan of money. The assignee of the contractor could acquire no greater right by reason of an assignment than that which the contractor himself might assert against the owner.*" (Italics supplied.)

So relying, it points out that if the contractor were here claiming the moneys in question, on the ground that it had used an equivalent amount of its own funds to pay off material claims which the surety would have had to pay if the contractor had not paid them, it would have to be admitted that the contractor could not do this, for, it has contracted to indemnify the surety against loss, and it cannot claim against any balance in the owner's hands as against the surety until the surety is fully exonerated. It insists therefore, that since the contractor could not make the claim, he cannot by assigning his claim to another, give that other the right to make it, for an assignee stands always in his assignor's shoes.

The town and the bank, admitting that if the funds in question were moneys paid out of the retained percentages, the surety's position would be unanswerable under the authorities, insisted that they do not apply here. They urged, citing Kane v. First National Bank, 5 Cir., 56 F.2d 534, 85 A.L.R. 362, and Third National Bank v. Detroit Fidelity & Surety Co., 5 Cir., 65 F.2d 548, that, since the June estimate was earned though never issued, the contractor and the bank stand in the same position they would have stood in had the money been actually paid to the contractor before the surety took over. The surety, pointing out that the Kane and Third National cases are not at all in point, insisted that the matter was not an open one, that the very question had been decided against the bank in these cases, Farmers' Bank v. Hayes, 6 Cir., 58 F. 2d 34; First National Bank v. City Trust, Safety Deposit & Surety Co., 9 Cir., 114 F. 529; Lacy v. Maryland Casualty Co., 4 Cir., 32 F.2d 48; Henningsen v. United States Fidelity & Guaranty Co., 208 U.S. 404, 28 S.Ct. 389, 52 L.Ed. 547; all holding that after default and the surety took over, its rights are the same as to all moneys retained in the owner's hands, without regard to whether these retained moneys are the retained percentages or earned funds.

While the suit was in progress, the surety paid off all bills properly chargeable to the work, and made a showing that the whole of the $15,810.08, in the hands of the town when the surety took over the job, was $5,000 short of its exoneration. The District Judge, agreeing with the surety that the bank stood in the contractor's shoes and that the fact that the contractor used the money loaned him by the bank to pay off material claims, was immaterial to the contest between the surety and the bank, because the contractor, if he had so advanced his own funds, could not have prevailed against the surety, struck the answer of the bank seeking to make this defense. And finding that by the arrangements for the payment to the bank, the town was completely protected, and in effect, still held the money in its hands, gave judgment for the surety against both town and bank.

While both town and bank have appealed, the burden of the appeal is borne by the bank, for the town has now paid the surety all of the moneys in its hands, except the $5,105.77 paid the bank, and as to that, is completely secured.

I agree with the District Judge. While most of the cases have had to do with retained percentages, many of them did not, and some of those cited above, have direct-

ly held that there is no difference in the surety's rights as to retained percentages and earned funds, as long as they are in the hands of the owner and necessary to the surety's protection and exoneration.

But, authorities aside, I think it clear upon principle, that this must be so. For, if it were not then a contractor, by being careful to lay out no moneys of his own and to obtain, on assignments of his estimates, the moneys that he needs, could deprive the surety and the owner of the protection, which the owner always has, of stopping payments, when it is apparent that the contractor will not or cannot complete his contract, is or will be in default. This was the situation here when the contractor gave the assignment. The work was completed with the exception of a small additional amount, and there was then due and owing, more in material bills than the amounts retained in the town's hands. Reason, justice and common sense, I think, conspire to teach that the right of the owner to protect himself and the surety by withholding funds in his hands when the contractor is in default, be not impaired or taken away by any act of the contractor so situated. They conspire to teach that the contractor cannot, by assigning the funds, give to his assignee claims upon them which the contractor himself did not have.

The judgment was right.